**Ex parte Aaron TRODLIER.**

**No. 15891.**

Court of Civil Appeals of Texas, San Antonio.

July 13, 1977.

Rehearing Denied July 13, 1977.

---

794

D. L. Ferguson, San Antonio, for appellant.

Tom Joseph, San Antonio, for appellee.

BARROW, Chief Justice.

This is an original habeas corpus brought by relator who was confined under a judgment adjudging him to be in contempt of court for failure to comply with an order of the trial court to make temporary child support payments.

■ It is settled law that a habeas corpus proceeding is a collateral attack upon the order of commitment and the relator is entitled to be discharged only if it affirmatively appears that that judgment ordering his confinement is void, thus depriving the court of jurisdiction. *Ex parte Davis,* 161 Tex. 561, 344 S.W.2d 153 (1961); Greenhill and Beirne, *Habeas Corpus Proceedings in the Supreme Court of Texas,* 1 St. Mary's L.J. 1, 10 (1969).

Relator urges that the contempt judgment is void in that he did not receive ten days' notice of the hearing as required by Rule 308–A, Tex.R.Civ.P. In support of this contention, relator cites *Ex parte Hoover,* 520 S.W.2d 483 (Tex.Civ.App.—El Paso 1975, no writ).

The court's conclusion in *Hoover* is contrary to the express holding of the Supreme Court in *Ex parte Cardwell,* 416 S.W.2d 382 (Tex.1967). In considering the question of whether trials for contempt held upon less than ten days' notice will constitute a denial of constitutional due process, the Supreme Court said:

We have held that while the *language* of the statute (Art. 4639a) and the rule (308–A) is mandatory, trials for contempt conducted upon less than ten days' notice will not constitute a denial of constitutional due process in all instances; and contempt judgments based on such trials may, therefore, be valid. Where there is less than ten days' notice, the relator may be entitled to be discharged because of a lack of due process. *Ex parte Davis,* 161 Tex. 561, 344 S.W.2d 153 (1961). As we said in *Davis,* each case must be evaluated on its own facts. [416 S.W.2d at 384.]

Thus, the determinative question is whether on the record before us relator has been denied constitutional due process.

■ Relator and his wife have been embroiled in a contested divorce action for over a year. On August 31, 1976, a temporary order was signed which directed relator to pay certain sums to Mrs. Trodlier for support of his two minor children. On May 9, 1977, Mrs. Trodlier filed a motion that relator be held in contempt for failure to obey such order of the court and a fiat was signed setting a hearing on this motion for May 23, 1977. The Bexar County sheriff was unable to serve relator with the notice

and a copy of the motion until May 20, 1977. Relator did not appear for the hearing on May 23rd, either in person or through his attorney. Nor did he subsequently make any response to the motion or seek a rehearing on the motion. On June 15, 1977, he surrendered to the Bexar County sheriff and, on the same date, the application for habeas corpus was filed in our court. Relator was released on bond pending a determination of the validity of the contempt judgment.

Relator supports his claim for lack of constitutional due process solely on the brevity of the notice. He contends a hearing with less than ten days' notice as required by Rule 308–A, Tex.R.Civ.P. violated his constitutional rights to due process as a matter of law. Such a contention was rejected by the Supreme Court in *Ex parte Davis, supra,* and *Ex parte Cardwell, supra,* as well as by two courts of civil appeals. See *Ex parte Sturdivant,* 551 S.W.2d 144 (Tex.Civ.App.—Texarkana 1977, no writ); and *Ex parte Cox,* 479 S.W.2d 110 (Tex.Civ. App.—Houston [1st Dist.] 1972, no writ).

Relator made no effort in the trial court or in our court to demonstrate how he was prevented by the short notice from presenting a defense to the motion for contempt, or even from seeking a postponement of the hearing if additional time was required to subpoena witnesses and to prepare for trial. It is significant that the motion was filed ancillary to an on-going judicial proceeding wherein relator was already represented by an attorney. In fact, his attorney filed an appeal bond in the divorce suit the day after the contempt judgment was signed. Yet, relator did not appear pursuant to the notice. We conclude from this record that relator has not shown a constitutional denial of due process.

Relator's application for habeas corpus is denied and he is ordered remanded to the custody of the Sheriff of Bexar County, Texas.

CADENA, Justice, dissenting.

Neither *Ex parte Cardwell,* 416 S.W.2d 382 (Tex.1967), nor *Ex parte Davis,* 161 Tex. 561, 344 S.W.2d 153 (1961), compels, or supports, the conclusion that relator in this case has not been illegally imprisoned. In both of those cases, of course, the relator was ordered discharged.

I would hold that three days' notice of a contempt hearing is unreasonable and violative of due process when notice of the hearing to be held on Monday, May 23, 1977, was served on relator on the preceding Friday, May 20, 1977.

If, as apparently required by Rule 4, Tex. R.Civ.P., we exclude the date of service in computing the time prescribed by Rule 308– A, but include the date on which relator was commanded to appear, the result is that relator had three days' notice of the hearing. The first two days of this three-day period were Saturday, May 21, and Sunday, May 22. The third day, of course, was Monday, May 23, the date set for the hearing. Since the hearing was set for 9:00 a. m. on Monday, the third day did not consist of 24 hours.

This Court, which sits in the Bexar County Courthouse, judicially knows that such courthouse, except for the sheriff's office, is closed on Saturdays and Sundays. This shutdown includes the office of the district clerk, to whom applications for the issuance of subpoenas for witnesses are taken and who, in fact, issues the subpoenas. This makes it difficult, if not impossible, to secure the issuance of subpoenas on Saturdays and Sundays. Most lawyers do not come to their offices on Saturdays and Sundays. Only by ignoring the realities of the five-day week can it be asserted that relator in this case was afforded a reasonable opportunity to prepare for the hearing.

The actual holding in *Davis* was that notice, served on September 8, of a contempt hearing held on September 10, was insufficient notice to meet the requirements of due process. In the course of the opinion it is said that no clear and definite line can be drawn "between that length of notice which will afford due process and that which will not." 344 S.W.2d at 157. Each case must be evaluated on its own facts.

It would not be out of order to analyze the special "facts" on which the conclusion of denial of due process in *Davis* was based.

1. Davis did not voluntarily appear at the hearing, since his appearance was made under compulsion of the show cause order. In the case before us, it certainly cannot be said that a failure to appear constitutes a voluntary appearance which results in waiver of the right to sufficient notice.

2. Davis was not represented by counsel. In this case the order of contempt recites that relator did not appear. No attorney appeared on behalf of relator at the hearing.

3. There was nothing in the record to indicate that Davis knew or was advised that he was "entitled to further time under the statute and the rule in which to obtain counsel and prepare for trial." 344 S.W.2d at 156. The record before us contains nothing suggesting that relator knew or was advised that he was "entitled" to additional time.

4. Seven days after the hearing Davis appeared, accompanied by counsel, in compliance with the trial court's statement that his judgment would be announced at that time. Since the trial court did not certify that Davis offered no testimony at that time, the Supreme Court "inferred" that the offer of additional testimony was made by Davis and rejected by the court. Even if we indulge this inference, it in no way supports the conclusion that Davis, because of the brevity of the original notice, was unable to gather his witnesses, employ counsel and prepare a defense at the original hearing. Surprisingly, the opinion of the Supreme Court does not even hint that the testimony, which it inferred Davis sought to present seven days after the hearing differed in any respect, significant or insignificant, from the testimony he actually presented at the hearing. The fact that he offered testimony cannot support the conclusion that he could not have had such testimony ready for presentation at the hearing seven days previously, unless we presume that tardy performance, standing alone, constitutes proof of impossibility of timely performance. Stated simply, there is nothing in this "fact" which even tends to show that the brevity of notice deprived Davis of a reasonable opportunity to defend himself.

5. Davis was a deaf-mute. The Supreme Court assumed that this physical handicap resulted in difficulty of communication and understanding. There can be no quarrel with this assumption, but the difficulty of communication and understanding under which Davis labored does not establish that his handicap made it impossible to prepare a defense for presentation at the hearing. The facts, as recited in the *Davis* opinion, indicate the contrary. Davis appeared at the trial. He testified and presented witnesses who testified for him. His ex-wife, movant in the contempt proceeding, was also a deaf-mute. Since Davis had previously lived with her in the intimate relationship of husband and wife, it is, perhaps, fair to assume that he had no difficulty understanding her testimony even without the aid of the "interpreter" required in order to make it possible for the trial judge to know what she was attempting to communicate. The appearance of Davis at the hearing, accompanied by his witnesses, precludes the assumption that, because of his physical disability, he was unable to read and understand the show cause order. It is also significant that, despite his disability, Davis had no difficulty in understanding the trial court's instruction that he appear before the court seven days later.

Inability to speak and hear is no indication, standing alone, of inability to prepare a defense, unless, from the mere presence of the disability, we infer a degree of intellectual inferiority.

Stated bluntly, there are no "facts" in *Davis* which even tend to suggest that Davis had no sufficient time to prepare and present his defense, or that he had insufficient time to employ counsel. The facts on which the Supreme Court relied were all gratuitously assumed by the Supreme Court because of the fact that Davis was a deaf-mute, from which fact the Court apparently

inferred that he was so mentally retarded that he did not know what was going on, although the actual "facts" of the case brand this inference as completely unwarranted.

As a practical matter, relator in this case had but one "working" day or, perhaps, only a part of one such day, in which to prepare his defense. As the Court pointed out in *Davis,* 344 S.W.2d at 157, in *Roller v. Holly,* 176 U.S. 398, 20 S.Ct. 410, 44 L.Ed. 520 (1900), the Supreme Court of the United States "observed that in a serious matter one should not be required to answer the first day of a practical opportunity or even

on the next day." A contempt proceeding, which may result in indefinite incarceration, can fairly be regarded as a "serious matter."

Thus, even if we unquestioningly accept the pronouncements in *Cardwell* and *Davis* to the effect that the statements in § 14.-09(b) Tex.Family Code Ann. (1975) and Rule 308-A, Tex.R.Civ.P., that notice of the show cause order "shall be served on the respondent . . ., not less than ten days prior to the hearing" does not mean what it says,[1] but merely requires "reasonable notice", relator in this case should be discharged.

---

1. In both *Cardwell* and *Davis* the Supreme Court said that the language of the statute and rule is "mandatory". Yet, with the exception of *Ex parte Hoover,* 520 S.W.2d 483 (Tex.Civ. App.—El Paso 1975, no writ), no Texas court has ever enforced this mandatory language.

Under no circumstances will the Texas courts enforce the statute and rule. Where, as in *Cardwell* and *Davis,* a relator is ordered discharged because of the brevity of notice, the order of discharge is not based on failure to comply with the notice requirements of the statute and rule. This is made clear in *Davis,* 344 S.W.2d at 155:

> Neither the statute nor the rule contains a prohibition against conducting a contempt hearing in less than ten days after a show cause order is served. There is nothing in either of them which prohibits a person charged from appearing and agreeing that the hearing may be held at any time. The holding of a contempt hearing within less than ten days from the date on which a show cause order is served is a procedural irregularity only. . . .
> On the other hand, the holding of the hearing in less than ten days after service of notice may constitute a denial of due process. The direction of ten days' notice in the statute and rule is in mandatory language. The obvious purpose of the direction is to afford the defaulting party reasonable opportunity to employ counsel, gather evidence, subpoena witnesses and prepare for trial. *Cardwell* contains similar language. 416 S.W.2d at 384.

What is being enforced, then, is not the "mandatory language" of the statute and rule, but, rather, the constitutional requirements of due process. The statute and rule cannot affect the result in any case. That is, the statute and rule are both examples of futile and meaningless use of mandatory language.

For a person charged with contempt to appear and urge that he is entitled to longer notice under the statute and rule is, at worst, an exercise in futility or, at best, a supplication made on bended knee. The granting or denial of the request for additional time is absolutely discretionary with the trial judge, at least where the request is based solely on the provisions of the statute and rule. If respondent's request is denied, he is left with no means of correcting the "procedural irregularity." If he is jailed he cannot appeal. His sole remedy is an application for writ of habeas corpus. As relator he merely wastes his time by calling the statute and rule to the attention of the court, since the "procedural irregularity" does not render the order of commitment subject to collateral attack. He can find shelter only in the constitutional requirement of due process. As far as our courts are concerned, in a habeas corpus proceeding the statute and rule are irrelevant.

In *Davis* the Supreme Court said that the "obvious purpose" of the mandatory language found in the statute and rule is to afford respondent "reasonable opportunity" to prepare for trial. No attempt is made to explain why the legislature, instead of simply directing that "reasonable notice" be given—a mode of expression which unequivocally stated what the Supreme Court called the "obvious purpose" of the statute—chose, instead, to speak in terms of "ten days'" notice, apparently hoping that the judiciary would be able to penetrate the verbal smokescreen and recognize that the obvious purpose of the statute was to require "reasonable notice" instead of "ten days'" notice.

The obvious purpose which the Supreme Court attributed to the legislature cannot be found without changing the actual language used. Without such judicial blue-penciling, the legislative purpose to require merely "reasona-

ble notice" is not at all obvious. The language used suggests only one purpose. That purpose is to afford ten days' notice. That is the only purpose which can be said to be "obvious" without ignoring the language used.

The term "ten days" is clear and unambiguous. It is nonsense to speak of a "strict" or "liberal" interpretation of that term. No explanation is given of the mental processes by which the term was translated into "reasonable." The only explanation offered is that it is "obvious" that "ten days" means "reasonable".

True, neither the statute nor the rule contains language which expressly prohibits the holding of a contempt hearing within less than ten days after service of the show cause order. But the absence of such language is not determinative of the question. The only statutory language which authorizes imprisonment of a person who disobeys an order for the payment of child support states that ten days' notice "shall" be given. There is no authority for imprisonment on shorter notice.

In an ordinary civil suit, according to Rule 101, Tex.R.Civ.P., the citation "shall" command defendant to appear by filing an answer "at or before 10 o'clock a. m. on the Monday next after the expiration of 20 days after the date of service" of the citation. Suppose the citation commanded defendant to answer at or before 10 o'clock a. m. of the Monday next after the expiration of *10* days after the date of service of citation. Would a default judgment based on defendant's failure to answer within the telescoped period be valid. The answer is that such a judgment would be void and subject to collateral attack. *Lamesa Rural High School Dist. v. Speck,* 253 S.W.2d 315 (Tex.Civ.App.— Eastland 1952, writ ref'd n. r. e.). In *Speck* the Court said: "Rules relating to service of process are mandatory and a default judgment based upon citation and service not complying therewith, is void, if the defect is apparent on the face of the record." 253 S.W.2d at 316.

It should be pointed out that Rule 101 contains no language expressly prohibiting the entry of default judgment where the time specified in the citation is less than that prescribed by Rule 101. Rule 124, Tex.R.Civ.P., does prohibit the rendition of any "judgment" against a defendant "unless upon service, or acceptance or waiver of process, or upon an appearance by the defendant, . . ., except where otherwise expressly provided by law or these rules." Why is it that in ordinary civil cases directions concerning length of notice must be meticulously observed, even though defendant stands to lose nothing more than a mule, while in contempt proceedings such directions may be blithely ignored when a man faces incarceration as well as loss of property.

It is idle to speak of a supposed distinction between the "citation" by which an ordinary civil suit is instituted and the "notice" by which contempt proceedings are initiated. The word "citation" is not found in Rule 124. It is clear that the notice spoken of in the statute and rule with which we are here concerned serves the same purpose as does the citation in ordinary civil actions. Service of citation is the means by which the court obtains jurisdiction over the person of the one to whom the citation is directed. As pointed out in *Davis,* in a contempt proceeding where the contempt is based on conduct committed outside the presence of the court, the court obtains jurisdiction over the person of respondent by service of the show cause order. 344 S.W.2d at 153. Service of the show cause order cannot be equated with "notice" that a case has been set for trial, or with "notice" that a motion for new trial has been filed. Such notices merely inform the person to whom they are directed that certain things have happened in a case in which the court has already satisfied requirements for the existence of in personam jurisdiction. The "notice" of a contempt hearing is not merely a method of conveying information. Service of the show cause order is the method by which the court obtains in personam jurisdiction. The fact that the contempt proceeding is designed to enforce compliance with an order issued in a cause still pending before the court seeking to enforce its order is completely irrelevant. The fact that such court has acquired in personam jurisdiction of the defendant for the purpose of ordering payment of child support does not vest in it jurisdiction over the person of the defendant for the purpose of enforcing its order by locking him up. Jurisdiction over the person for the purpose of ordering incarceration because of disobedience of the court order can be obtained only by service of the show cause order.

The question recurs: Why are rules relating to service of process mandatory, including the period of notice, in ordinary civil suits while such rules may be disregarded in contempt proceedings? The only answer suggested in *Davis* is as simple as it is surprising. The purpose of the contempt proceeding is to determine whether penal sanctions are to be imposed on respondent. He may be fined and, in addition, he may be incarcerated and kept locked up for an indefinite period until he purges himself of the contempt. A contempt proceeding has some of the incidents of a trial for crime and is quasi criminal in nature. 344 S.W.2d at 156. The rationale offered in *Davis* may be fairly summarized as follows: In a contempt proceeding a person faces loss of liberty as well as loss of property. Therefore, the notice requirements are not as binding as they are in a case where he faces only loss of property. That is, the more serious the possible consequences of the judicial proceeding, the more unimportant becomes the necessity of

complying with the method by which the court acquires in personam jurisdiction. Those who consider such an argument persuasive would probably describe it as unanswerable when considered in light of the fact that the judgment of imprisonment in a contempt proceeding, unlike the judgment in an ordinary civil case, is not appealable and that, therefore, the person who has been jailed has no opportunity to correct procedural irregularities as does the person who has been deprived of his mule.

It can safely be predicted that the sky would remain firmly in place even if the statutory provision concerning notice in contempt cases were applied exactly as written without the benefit of judicial editing based on the notion that "ten days' notice" obviously means "reasonable notice." Nor would the firmament plunge downward if our courts would, at least, consider the legislative language as an indica-

tion that the legislature, in its judgment, considered notice short of ten days suspect, requiring a showing that noncompliance with the mandatory language of the statute did not, in fact, deprive respondent of a reasonable opportunity to prepare his defense, rather than disregarding the language altogether and placing upon respondent who, according to *Davis,* is entitled to ten days' notice, the burden of showing that he was not harmed by the disregard of the mandatory language.

There is, of course, a simple answer to everything contained in this footnote. Courts of Civil Appeals are bound by decisions of the Texas Supreme Court. To attempt to point out that the Supreme Court decisions may not be easily defended is, for an intermediate appellate court, perhaps as futile as the attempt by a *respondent to seek relief because the mandatory language of the statute has been disregarded.*