Ex parte Antonio PADRON, Relator.

No. B–6930.

Supreme Court of Texas.

May 10, 1978.

Huerta, Pena, Beckman, Rodriguez & Alfaro, J. Manuel Banales, Corpus Christi, for relator.

Amador Garcia, Corpus Christi, for respondent.

POPE, Justice.

Antonio Padron sought release from the Nueces County jail where he was committed and "confined until such time as he shall consent to and does in fact execute and does sign the foregoing instruments in open court." This court enlarged relator pending our decision in this case. Our concern has been the identity of the order that Padron is charged with violating.

An order for civil contempt must be grounded upon one's disobedience of an order that spells out "the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him." *Ex parte Slavin*, 412 S.W.2d 43, 44 (Tex.1967). It is the settled rule that to sentence one to confinement for contempt of a prior court order that the order must be unequivocal. We therefore need to find an order of the trial court which unequivocally commanded Antonio Padron to execute certain instruments.

On January 20, 1976, Antonio and Maria Padron were divorced. The decree granted Maria the right to acquire Antonio's interest in the lot and improvements where the family had lived. She had a period of sixty days in which to pay Antonio $2,703.05, the amount of certain stated debts and an additional sum of $6,231.00 as his interest in the property. The decree further provided that, upon Maria's failure to exercise her right, the property would be sold and the proceeds would be applied on the community debts. It then provided:

Each party hereto shall be reimbursed from such proceeds of sale in an amount equal to the difference between the balance due on the community debts at the time of this judgment and the balance due when such accounts are fully paid. The Respondent (Antonio) is entitled to and is . . . awarded credit in the amount of $2,050.00 plus one half of the money remaining after payment of all debts from the proceeds of sale as his interest in the real property . . . .

Antonio is not charged with violating that decree, because it ordered him to do nothing.

Maria did not exercise her right to purchase Antonio's interest, so Antonio returned to the divorce court and asked that the court appoint a receiver to effect a sale. After a hearing, the court on April 1, 1976, appointed E. V. De Leon as the receiver. That order stated his powers:

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, that a receiver should be appointed, and that E. V. De Leon is a person fully qualified to act as receiver to handle the sale of the property and that an appraisal be ordered to determine the actual value of the property.

\* \* \* \* \* \*

IT IS FURTHER ADJUDGED AND DECREED, that the receiver upon selling the property deposit in the registry of the Court the sum of said sale, and that upon receipt of the amounts that are to be paid discharge the indebtedness of the parties herein, the attorney's fees to the respective attorneys and, divide the remaining sum in accordance with the original decree of divorce which is incorporated by reference as is fully set out in this order.

That order vested all powers over the property in the receiver and it again required Antonio to do nothing.

On January 27, 1977, E. V. De Leon, the receiver, and Maria filed a motion in the original divorce action asking that Antonio appear and show cause why he should not be held in contempt for willful disobedience of the court's April 1, 1976, order. The

motion is significant. It recites that E. V. De Leon was appointed as receiver, that an appraisal had been made of the property showing it was worth $12,500.00, that Antonio Padron had been called upon to visit the office of Maria's attorney for an explanation of the transaction, and that Antonio had gone to the office of Maria's attorney, but refused to sign any documents. The motion to show cause charged that Antonio refused to execute the documents to effect the sale. The specific January 27, 1977 charge against Antonio was:

VII. Movants would show that although Antonio Padron has been able to execute this contract, he refuses to comply and has willfully disobeyed the orders of this Court by failing to execute the necessary instruments to dispose of the property as per the orders of this court.

VIII. Movants, Maria R. Padron and E. V. De Leon, pray that the Court set a hearing and issue notice to Respondent to appear and show cause why Respondent should not be held in contempt of Court for willful disobedience of the Court's order by failing to execute the necessary instruments to permit the sale of the property herein.

Attached to the motion to show cause was a contract of sale which had been signed by Maria Padron as seller and by Mr. and Mrs. Cantu as buyers. Antonio had refused to sign the contract as one of the sellers. E. V. De Leon, the receiver, was unnamed in the contract of sale even though the court's order of April 1, 1976, named him as "a person fully qualified to act as receiver to handle the sale of the property." His name, however, was mentioned in the contract as the real estate agent to whom six percent real estate commission was payable.

Antonio appeared for the contempt hearing on February 23, 1977, in answer to the charge. The court, instead of adjudicating the contempt matter, heard evidence and then modified its April 1, 1976 order appointing the receiver. That corrective order was actually dated March 15, 1977, and it made explicit the powers of the receiver:

IT IS THEREFORE ADJUDGED AND DECREED that a Receiver should be appointed, and that E. V. De Leon is a person fully qualified to act as a Receiver to handle the sale of the property and that an appraisal should be ordered to determine the actual value of the property. That pursuant to the powers of the Receiver, said E. V. De Leon has the power and authority to execute the appropriate real estate contract in behalf of Maria R. Padron and Antonio Padron and to present said real estate contract with the appropriate title company, receive the escrow funds for the purposes of binding the real estate contract and to execute the necessary and proper instruments to consummate the sale to include but not limited to, the real estate contract, warranty deed, and title insurance papers.

\* \* \* \* \* \*

IT IS FURTHER ADJUDGED, AND DECREED that Receiver, upon sale of the property, deposit in the Registry of the Court, the sum of said sale, and that upon receipt of the amounts that are to be paid, discharge the indebtedness of the parties herein; the attorneys' fees to the respective attorneys; and divide the remaining sum in accordance with the original Decree of Divorce which is incorporated by reference as fully set out in this Order.

To this point, the trial court had made three distinct written orders concerning the disposition of the Padron house, but Antonio was still not ordered to do anything. The order next above strengthened the earlier defective order and made definite and clear that E. V. De Leon "*has the authority to execute* the appropriate real estate contract in behalf of Maria R. Padron and Antonio Padron . . . ." [Emphasis added.] The court's order stated that it was the receiver who had the power to "execute the necessary and proper instruments . . . the real estate contract, warranty deed, and title insurance papers."

On June 17, 1977, the receiver and Maria R. Padron started again with their contempt action. They filed a new motion for Antonio Padron to show cause. The motion recited the court's corrected order of March 15, 1977, which vested full powers in E. V. De Leon, the receiver, "to execute the necessary and proper instruments to consummate the sale . . . to include the real estate contract, warranty deed, and title insurance papers." The motion then asserted that Padron refused to join in signing the documents. The prayer in the motion was that Antonio Padron must show cause why he should not execute and approve the receiver's deed and failing to do that, why he "should not be held in contempt of court for willful disobedience of the Court's order by failing to execute and approve the Receiver's Deed and [the] closing statement at Stewart Title Company . . . . ."

Antonio appeared with his attorney on July 1, 1977, in answer to the show cause order and at the outset of the contempt hearing urged that there was no order that required Antonio Padron to do anything or sign anything.[1] The court had already twice designated E. V. De Leon as the receiver and had corrected an earlier order to make his appointment and powers clear.

The receiver's deed was introduced in evidence at the hearing. It recites the order of April 1, 1976, and the later corrective order of March 15, 1977. The receiver's deed quotes that part of the latter order which clearly designated E. V. De Leon as the receiver with the power and authority

---

1. MR. BANALES: We are not sure there is a Court Order requiring Mr. Padron to sign anything. The only order was that a receiver had been appointed to handle the closing of the estate. In the motion for contempt filed by the Petitioner there is no order in there saying that Mr. Padron is required or shall sign any paper to effectuate the sale of the property and to our knowledge, there is no order requiring him to do that. [S.F.5 ·6].

Well, Your Honor, it's our contention that in order for the property to exchange hands, that it's no longer necessary for Mr. Padron to sign anything. Since the Court had divided the property and there is no order of any court—prior order, that Mr. Padron perform anything—perform any act to effectuate the sale of the property. [S.F.7].

to execute all of the necessary contracts, deed and title insurance papers.

At the contempt hearing, Mr. De Leon, the receiver, testified, as did Mr. Neal Fulgham, manager of Stewart Title Company, and Mr. Padron. The evidence was that the title company had required Mr. Padron's signature on the deed and also on the final settlement statement. The court had never required Padron's signature. The court in the course of the hearing did not change its earlier written order that had authorized the receiver to execute the documents. The court in the course of the trial orally stated, "the Court will order him to, at this time, sign the Deed and the closing statement," and "Now, before the Court will enter that as a formal order, Mr. De Leon take the stand and explain what he as the receiver has gone through and what he has done . . . ." The court recessed the hearing from the morning until 4:00 p. m. so Mr. Padron and his attorney could examine the deed and closing statement that had been taken from the title company files for introduction in evidence during the hearing. The closing statement had not yet been completed. When the parties returned in the afternoon, the manager for the title company again testified. He said, in answer to a question by Mr. Padron's attorney, that his company would issue a title policy without Mr. Padron's signature on orders of the court, but the court did not make such an order since the company was not a party to the suit. The court, after addressing Mr. Padron about jail facilities, then ordered: "You can sign them now or—if you don't sign them now, you go to jail." Upon his refusal to sign he was placed in jail.

The charge against Mr. Padron, the one about which he was given notice to appear and on which he appeared in court and defended himself, was that he had violated the written order of March 15, 1977. His defense was that neither the March 15, 1977, order nor any other prior order had required his signature. Mr. Padron established a complete defense to the charge which brought him before the court.

Antonio Padron came into court to defend a charge of constructive civil contempt. There was a total failure to prove that he was ordered to do anything by the March 15, 1977, order. It was in the course of the contempt hearing that the court placed Padron on trial for a different violation by summarily making a different oral order. Padron was then found guilty of violating the new oral order.

Civil contempt in Texas is the process by which a court exerts its judicial authority to compel obedience to some order of the court. *Ex parte Werblud*, 536 S.W.2d 542 (Tex.1976). One who is committed to jail for civil contempt should be able to find somewhere in the record the written order, which meets the requirements of *Ex parte Slavin*, 412 S.W.2d 43 (Tex.1967). It is the written order which is entered on the minutes, which a court is directed to sign, Tex.R.Civ.P. 306a, and which evidences one's rights and duties. Oral orders are poor substitutes for the requirement of one final judgment. We have, in the instant case, an oral order which supplanted a written order. Furthermore, it is the latter which Padron was required to obey and punished for not obeying.

*Ex parte Harvill*, 415 S.W.2d 174 (Tex.1967), was a case in which the accused was called to show cause why he should not be held guilty of constructive civil contempt. In the course of that hearing, the court undertook to convert the hearing into a direct contempt hearing by making an oral order. We held in that case that a direct contempt is the "disrespectful conduct concerning the dignity and authority of the court committed in the presence of the court . . . ." 415 S.W.2d at 177. In rejecting the court's conversion of the hearing from a constructive civil contempt to that of a direct contempt we wrote:

Relator did no more than assert the right for which he was on trial and due process would be rendered for naught if such assertion could be converted into an act of direct contempt in the manner here shown. *Id.*

It was held earlier in *Ex parte Ratliff*, 117 Tex. 325, 3 S.W.2d 406 (1928), that a judgment convicting one of contempt is void when the order was based upon matter foreign to the accusation of contempt. From this record, Antonio Padron was not contemptuous as charged, and under *Harvill,* the court could not convert the constructive contempt into a direct contempt by a new and different order, made in the course of the hearing.

The relator is ordered discharged.

Dissenting Opinion by GREENHILL, C. J., in which BARROW, J., joins.

GREENHILL, Chief Justice, dissenting.

This is, in my opinion, a case of direct contempt, contempt in the presence of the court. There is no problem, in my opinion, as to notice. Padron was in court that morning with his attorney. He was told that the court would order him to sign the deed. When his attorney asked for time to examine the papers, the court recessed the hearing until 4:00 p. m. for that purpose. No objection was made as to this being an insufficient amount of time for the examination of the papers or for Padron to be advised of his rights by his attorney.

As a result of the conference, Padron was advised by his attorney to sign the deed; and the attorney so advised the court. The court, as he said in open court he would, ordered Padron to sign the deed, and Padron refused. No objection was raised as to the form or substance of the deed.

I can think of no reason why putting the judge's order in writing would have helped Padron, or due process, one bit. The matter was completely understandable and uncomplicated, and it had been fully explained to Padron by the court in the morning session, and he had the assistance of counsel if there was any question in the matter.

This court's holding that the trial court was without power to do what he did is unfortunate in that it thus reduces the power of trial judges.

History has taught us that it is necessary for trial judges to have sufficient power to carry out their orders in the administration of justice within the limits of due process. This power is recognized by the Legislature in Article 1911a. As indicated below, Padron was not deprived of due process. It is the trial judges who are, in my opinion, being deprived of powers by the court's opinion.

The question is not whether the trial judge acted wisely, or tactfully. The question is whether his order is so wanting in power as to be void. In my opinion, this Court has substituted its sense of fairness for that exercised by the trial judge. In doing so, it has deprived all trial judges of the power to do things under similar circumstances.

So that there may be no misunderstanding, it was Padron who initiated the sale of the house in question. *He* asked for the receiver to sell the house, and *his* motion was granted. He also asked for possession of the house, rather than leaving his wife in possession. When his request was granted and he got possession, he refused even to let an appraiser of the receiver come on the premises to make an appraisal.

As I understand it, the house was appraised for $12,500; and the receiver found a buyer who would pay $12,500 provided there was a title policy. A policy of title insurance was part of the consideration. The court's order of April 26 authorized the receiver to "handle" the sale "with the appropriate title company" and to consummate the contract "and title insurance papers." Since Padron was in possession, the title company would not issue a policy unless Padron signed the deed.

If there is any good reason why Padron refused to sign the deed, it has not been made known to the trial court or to us. There are no questions, so far as I know, about the title to the property. Padron does not even contend that he and his wife did not own the property. No act outside of the presence of the court needed to be established. No witnesses needed to be called, and Padron had, in my opinion, full knowledge and notice as to what the court

would and did direct him to do,—and what his counsel advised him to do after full opportunity to study the matter.

The court, in open court, directed Padron to sign. In the presence of the court, Padron refused. He was advised that he would be held in contempt. He still refused. To me this is a plain direct contempt of court after due notice, and after Padron had ample opportunity with the assistance of his lawyer to decide what he would do. His confinement was authorized under Article 1911a.

I would remand Mr. Padron to the custody of the sheriff.

BARROW, J., joins in this dissenting opinion.