Ex parte Aubrey Jerald GORDON.

No. B–8101.

Supreme Court of Texas.

April 4, 1979.

Butler, Binion, Rice, Cook & Knapp, Tom Alexander and Norman J. Riedmueller, Houston, for relator.

John D. Wooddell, Austin, for respondent.

McGEE, Justice.

This is an original habeas corpus proceeding. Relator Aubrey Jerald Gordon petitioned this court, seeking release from the Travis County jail where he was confined for fourteen days under the district court's order of commitment. We released the relator on bond pending our resolution of the case. The central issue presented is whether the relator was afforded proper notice of the contempt charge of which he was ultimately convicted.

On June 26, 1978, the State of Texas filed an original petition, seeking to place certain related insurance companies into receivership. Named as defendants were The Phoenix Companies, Inc., d/b/a The Phoenix Companies, and Eagle Financial Services, Glowia Lee Gordon, Buddy W. Gregory, Robert W. Martin, Phoenix Fidelity Life Insurance Company and General Protective Life Insurance Company. Relator, as an officer of the companies, was also named as a party defendant. The original petition sought a temporary restraining order, a temporary injunction and the appointment of a temporary receiver. That same day a combined "Temporary Restraining Order and Order Appointing Temporary Receiver" (hereinafter T.R.O.) was signed by the court. By its own terms, this combined order was to expire ten days after its rendition. On July 6, 1978, the day the T.R.O. expired, an "Agreed Order for a Temporary

Injunction and Order Continuing Temporary Receivership" (hereinafter temporary injunction) was signed by the court.

On November 22, 1978, the receiver filed an instrument captioned "Motion for Contempt," which named relator as respondent and alleged that he had violated the terms of the temporary injunction in several particulars by disposing of or concealing receivership property. After examining this contempt motion, the court signed an "Order to Show Cause." The show cause order, however, directed the relator to appear and show cause why he should not be held in contempt for refusing to comply with the *"Temporary Restraining Order and Order Appointing Temporary Receiver."* Hearing was set for November 29, 1978.

On the day of the hearing, relator filed a motion to vacate the show cause order. He argued that the T.R.O. expired by virtue of its own terms on July 6, 1978, and therefore, he could not be guilty of alleged contemptuous acts committed subsequent to the expiration of that order. The receiver conceded that the show cause order erroneously referred to the T.R.O., but argued that there was "no confusion in anybody's mind about the injunction against these people. . . ." The court overruled the relator's motion and proceeded to take evidence as to whether there had been a failure to comply with the temporary injunction. That same day an order was rendered holding the relator in contempt for disobeying the temporary injunction and sentencing him to fourteen days' confinement in the Travis County jail.[1]

In support of his petition for habeas corpus, relator argues that the contempt order is void inasmuch as he was ordered to show cause why he should not be held in contempt for violating the T.R.O., but without proper notice was held in contempt for violating the temporary injunction. We agree and discharge the relator.

A writ of habeas corpus is available in this state to review a contempt order

---

1. This order also suspended relator's sentence provided that he comply with certain expurgation provisions within fourteen days. After finding Mr. Gordon's attempted compliance unacceptable, the court issued an "Order of Commitment" on December 14, 1978.

entered by a lower court confining a contemnor. The remedy is in the nature of a collateral attack and its purpose is not to determine the ultimate guilt or innocence of the relator, but only to ascertain whether the relator has been unlawfully imprisoned. Where the judgment ordering confinement is "void," the confinement is illegal and the relator is entitled to discharge. *See, Ex parte Rhodes*, 163 Tex. 31, 34, 352 S.W.2d 249, 250 (1961); *Ex. parte Trodlier*, 554 S.W.2d 793, 794 (Tex.Civ.App.—San Antonio 1977, no writ); *Greenhill & Beirne, Habeas Corpus Proceedings in the Supreme Court of Texas*, 1 St. Mary's L.J. 1, 6, 11 (1969). As detailed below, the absence of notice of the contempt charge may render the order void and the confinement illegal.

Contemptuous conduct may be classified as either direct or constructive. Direct contempt occurs within the presence of the court; for example, an affront to the dignity of the court or disruptive conduct in the courtroom. Constructive contempt, on the other hand, is contemptuous conduct outside the presence of the court, such as the failure or refusal to comply with a valid court order. *Ex parte Werblud*, 536 S.W.2d 542, 546 (Tex.1976); *Ex parte Ratliff*, 117 Tex. 325, 327–28, 3 S.W.2d 406, 406–08 (1928); Comment, *Contempt of Court in Texas*, 14 S.Tex.L.J. 278, 285–86 (1973).

As we stated in *Werblud*, "this distinction has more significance than merely identifying the physical location of the contemptuous act, since more procedural safeguards have been afforded to constructive contemnors than to direct contemnors." 536 S.W.2d at 546. Direct contemnors are not entitled to notice of the contempt charge or a hearing because there is no factual dispute arising from contemptuous behavior that occurs in the court's presence. *Ex parte Ratliff*, 117 Tex. 325, 327, 3 S.W.2d 406, 406 (1928). In situations of constructive contempt, however, the court may not act in such a summary fashion. Due process of law requires that the constructive contemnor be given "full and complete notification" and a reasonable opportunity to meet the charges by way of defense or explanation. *Ex parte Edgerly*, 441 S.W.2d 514, 516 (Tex.1969); *accord, Ex parte Ratliff*, 117 Tex. 325, 328, 3 S.W.2d 406, 407 (1928). As such, the court must issue a valid show cause order or equivalent legal process apprising the contemnor of the accusation. *Ex parte Edgerly*, 441 S.W.2d 514, 516 (Tex.1969); *Ex parte Hodge*, 389 S.W.2d 463, 463 (Tex.1965). A contempt judgment rendered without such notification is a nullity. *Ex parte Ratliff*, 117 Tex. 325, 327–28, 3 S.W.2d 406, 407 (1928).

It is undisputed that relator was charged and found guilty of constructive contempt in that he failed to comply with a court order. Therefore, we must determine from an examination of the record whether he was afforded notice of the charge upon which he was ultimately convicted. The following excerpt from the November 29th contempt proceeding is pertinent:

MR. BROWN [attorney for relator]: Your Honor, the Respondent, Aubrey Jerald Gordon, most respectfully presents to the court a Motion to Set Aside the Show Cause Order. . . . The Show Cause Order itself, in essence, says, 'Aubrey Jerald Gordon is to appear this date and time in this court to show cause why he should not be held in and punished for contempt of this court for his conduct in refusing to comply with this court's Temporary Restraining Order and Order Appointing Temporary Receiver.'

[The T.R.O.] . . . expired by its terms on the face of the Order at 9:00 o'clock A.M. on the 6th day of July, 1978. So that is the life of that restraining order. . . .

The Motion for Contempt alleges acts occurring subsequent to the death of that order. It is impossible for him to be in contempt of these allegations of the Restraining Order and we would move the Show Cause Order be set aside, Your Honor.

THE COURT: The only thing set for today is the Motion for Contempt?

MR. BROWN: That is it, the particular Order to Show Cause.

MR. HARRIS [Attorney for the receiver]: Your Honor, there was entered on July the 6th, an order, agreed Order of Temporary Injunction, ordering a temporary receivership; and let me show the court the Order.

The application, the Show Cause Order by error refers back to the T.R.O. and not this one [temporary injunction]. This is the one we are here on today, . . .

MR. BROWN: If it please the court, this is a contemptible proceeding this morning and as such, it has fine and imprisonment possibilities and therefore, the Respondent is entitled to proper notice, . . .

The Order to Show Cause specifically says, '. . . refusing to comply with this court's Temporary Restraining Order.' We are ready on that, Your Honor. We did not violate and could not, by these allegations on its face. The Temporary Restraining Order that is the only thing that is set for this morning before this court.

As aforementioned, the lower court overruled the relator's motion and proceeded to receive evidence as to whether there was a violation of the temporary injunction. The show cause order was not amended and an order holding relator in contempt was rendered the same day. Under these circumstances, we are of the opinion that the relator was not afforded notice of the charge against him, and consequently, that he was denied due process of law.

In *Ex parte Davis*, 161 Tex. 561, 344 S.W.2d 153 (1961), we noted that a contempt proceeding was unlike an ordinary civil proceeding. The alleged contemnor may not ignore the show cause order as he might ignore citation in a civil suit, for if he does he may be brought in under a capias. The hearing has some of the incidents of a trial for crime inasmuch as penal sanctions may be imposed and the alleged contemnor's appearance, not being voluntary, cannot be taken as a consent to trial on other charges. 161 Tex. at 564–65, 344 S.W.2d at 155–56.

In a recent habeas corpus proceeding before this court, *Ex parte Padron*, 565 S.W.2d 921 (1978), we discharged a relator under analogous facts. The court reasoned:

The charge against Mr. Padron, the one about which he was given notice to appear and on which he appeared in court and defended himself, was that he had violated the written order of March 15, 1977. His defense was that neither the March 15, 1977, order nor any other prior order had required his signature. *Mr. Padron established a complete defense to the charge which brought him before the court.*

*Id.* at 924 (emphasis added). We concluded "that a judgment convicting one of contempt is void when the order was based upon matter foreign to the accusation of contempt." *Id.* at 925 (citing *Ex parte Ratliff*, 117 Tex. 325, 3 S.W.2d 406 (1928)).

Similarly, the relator in the present case was ordered to show cause why he should not be held in contempt for refusing to comply with the T.R.O. Relator appeared and attempted to defend this accusation on the basis that the alleged acts occurred after the expiration of that order. The court nevertheless rendered a contempt judgment predicated upon an accusation different from that contained in the order to show cause.

The receiver argues that the show cause order and the motion for contempt taken together provided the relator with ample notice that the violations of the temporary injunction were the contemptuous acts in question. We disagree. The motion and the show cause order taken together create an ambiguity as to which order was allegedly violated. In such situation, the relator was justified in relying on the accusation of contempt as contained in the legal order of the court—the show cause order.

We are not unmindful of the purpose the lower court sought to accomplish in the present contempt proceeding. Nevertheless, constitutional due process of law requires that notice of the accusation, an opportunity to prepare a defense, and an opportunity to be heard be afforded to the

alleged constructive contemnor. We therefore hold that in situations of contempt committed outside the presence of the court, the contempt judgment must be based on a valid show cause order or equivalent legal process that contains full and unambiguous notification of the accusation of contempt. In view of this holding, relator's other points need not be considered.

The relator is discharged.

GREENHILL, C. J., notes his dissent.