**Ex parte John Wiley PRICE, Relator.**

**No. C–5372.**

Supreme Court of Texas.

Dec. 2, 1987.

David L. Botsford, Maloney, Gotcher & Yeager, Austin, Emmett Colvin, Bruner, McColl, McColloch & McCurley, Dallas, for petitioner.

Jerry L. Hughes, Bliss & Hughes, John E. Collins, Dallas, for respondent.

## OPINION

RAY, Justice.

This original habeas corpus proceeding arises out of a judgment holding John Wiley Price in violation of a permanent injunction orally rendered on May 2, 1986. The permanent injunction, however, was not reduced to writing and signed until May 9, 1986, after the allegedly contemptuous conduct occurred on May 3, 1986 and after a motion for contempt was filed on May 6, 1986. We hold that the judgment of contempt is void insofar as it is based upon the May 2, 1986 oral order purporting to render a permanent injunction, and order relator Price discharged. In view of this holding, it is unnecessary to address the remainder of Price's statutory and constitutional arguments.

On April 30, 1986, Paul Ragsdale, a candidate for reelection as state representative, filed an action seeking temporary and permanent injunctive relief and damages against the Progressive Voter's League, John Wiley Price, and other individuals, based on alleged violations of Chapter 251 of the Texas Election Code. The petition alleged that the League was a "political committee" within the meaning of § 251.001(15) of the Code and was therefore required to designate a campaign treasurer before it could conduct any political activities.[1] An ex parte temporary restraining order was signed the same day, which, *inter alia*, enjoined the League and Price from:

> Issuing, mailing or in any way distributing political slate cards, announcements, recommendations or campaign materials of any kind in support for or in opposition to candidates for public office ...

At a hearing on May 2, 1986, the court announced from the bench that it was granting a 30 day "permanent injunction," to expire of its own terms without further order of the court, and that it was continuing the terms of the temporary restraining order "as a permanent injunction."

The permanent injunction was not reduced to writing and signed until May 9, 1986. In the meantime, on May 6, Ragsdale filed a motion for contempt based on the May 2nd oral order. Since the permanent injunction had not yet been reduced to writing, this motion depended heavily on the original temporary restraining order in alleging that the Progressive Voter's League and Price had engaged in contemptuous conduct on election day, May 3, by distributing or causing to be distributed certain "Voters' Guides"—slate cards recommending certain candidates. After a hearing on May 23, the court held Price in contempt of the May 2nd oral order in that he gave to "some young person" green slate cards bearing the legend "Progressive Voters League Official Voters' Guide." The court assessed a punitive sentence of 96 hours in jail.

In this court, Price alleges various violations of his rights of freedom of speech, press and political association, as well as his rights to equal protection and due process of law, under both the Texas and Federal constitutions. Among other things, he asserts that the May 2nd oral "permanent injunction" is overbroad and vague in violation of both his First Amendment rights, and of his due process rights under *Ex Parte Slavin*, 412 S.W.2d 43 (Tex.1967).

In order for a party to be held in contempt for disobeying a court decree, the decree must spell out the terms of compliance in clear, specific and unambiguous terms so that such person will readily know what duties and obligations are imposed on him. *Ex Parte Slavin*, 412 S.W.2d 43, 44 (Tex.1967). A corollary to this rule is that a party who is committed to jail for constructive civil contempt should be able to find somewhere in the record the written order which meets *Slavin's* requirements. It is this written order, signed by the court and entered upon the minutes, which evidences a parties' rights and duties. "Oral

---

**1.** Section 251.002(f)(1), (2) of the Code provides that it is unlawful for a political committee to make a contribution or expenditure in support for or in opposition to a candidate, unless the committee's designation of a campaign treasurer was filed thirty days before the election. Contributions and expenditures are defined at § 251.001(4) and (5).

orders are poor substitutes for the requirement of one final judgment." *Ex Parte Padron*, 565 S.W.2d 921, 924 (Tex.1978). *See also Ex Parte Wilkins*, 665 S.W.2d 760 (Tex.1984). Here, the permanent injunction was not reduced to writing until after the allegedly contemptuous election day conduct occurred, and after a motion for contempt had been filed based on the May 2nd oral order and the prior temporary restraining order. Thus, Price had no operative written order to consult concerning what were his obligations and duties on election day, and moreover, no way to test the validity of that order before it became moot.

■ In addressing another aspect of constructive contempt, we have held that due process requires both a written judgment of contempt and a written order of commitment, although the trial court may cause a contemnor to be detained for a short reasonable time while the judgment of contempt and an order of commitment are prepared for the court's signature. *Ex Parte Barnett*, 600 S.W.2d 252, 254 (Tex. 1980). We are unwilling to extend that "grace period" to the instant situation, however, or to hold as a matter of law that the delay here was reasonable. There is nothing in the record to indicate that the delay in reducing the permanent injunction to writing was necessary, and its reasonableness should not be presumed. Nor can the contempt judgment be alternatively based on the temporary restraining order. *See Ex Parte Gordon*, 584 S.W.2d 686 (Tex.1979). For the reasons set out above, we hold that Price could not be held in contempt of the oral order dated May 2, 1986. Accordingly, relator is ordered discharged.

SPEARS, J., concurs with opinion.

GONZALEZ, J., concurs with opinion joined by KILGARLIN, J.

MAUZY, J., concurs with opinion.

SPEARS, Justice, concurring.

I concur for the same reason I concurred in *Ex Parte Wilkins*, 665 S.W.2d 760, 761 (Tex.1984) (Spears, J., concurring). I dis-

agree with the majority's holding that an oral order which is reduced to writing within a reasonable time can never satisfy the requirements of *Ex Parte Slavin*, 412 S.W. 2d 43, 44 (Tex.1967).

*Ex Parte Padron*, 565 S.W.2d 921, 924 (Tex.1978) established that one who is committed to jail for civil contempt should be able to find somewhere in the record the written order. That requirement was met in this case because the trial court's oral permanent injunction was eventually reduced to writing. The relator was held in contempt for his actions during the "window" period between the time the oral order was handed down and reduced to writing.

The majority adds an inflexible requirement to *Ex Parte Slavin* by holding that conduct which occurs during this "window" period can never be punished with contempt. This added requirement is unrealistic. In the busy courtrooms of this state, direct, explicit orders are frequently announced from the bench, with the formal written orders to be prepared by the attorneys or the court shortly thereafter. Oral orders, which are specific enough to give proper notice under *Ex Parte Slavin*, 412 S.W.2d at 44, should be obeyed by the parties and must be enforceable by contempt proceedings. The majority's creation of this "window" period allows parties to violate otherwise valid court orders with impunity. As I stated in *Ex Parte Wilkins*, 665 S.W.2d at 761 (Spears, J., concurring), this "window" can have disastrous consequences, particularly in family law proceedings.

I would hold that oral orders must be reduced to writing within a reasonable time under *Ex Parte Padron*, and must satisfy the notice and specificity requirements of *Ex Parte Slavin*. I would further hold that when an unambiguous, specific oral order is preserved in the record, and the party charged with contempt had actual notice of the order, the court can enforce it by contempt proceedings for a reasonable time until a written order can be signed. *Ex Parte Wilkins*, 665 S.W.2d at 762 (Spears, J., concurring).

Price had actual notice of the terms of the permanent injunction during the "window" period because the trial court merely continued the provisions of a prior written temporary restraining order. Additionally, seven days was not an unreasonable time to elapse before reducing an oral permanent injunction to writing in this case.

I concur in the result of this cause because the permanent injunction does not satisfy the notice and specificity requirements of *Ex Parte Slavin*, 412 S.W.2d at 44. The court order upon which an order of contempt is based must spell out the details of compliance in clear, specific and unambiguous terms so that a person will readily know exactly what duties or obligations are imposed on him. *Id.* A violation of a vague and uncertain court order cannot be punished by contempt. *Ex Parte Reese*, 701 S.W.2d 840, 842 (Tex.1986).

The section of the permanent injunction which was allegedly violated by Price provided that Price, the Progressive Voters League, and a number of other individuals would desist and refrain from:

2. Issuing, mailing, or in any way distributing political slate cards, announcements, recommendations or campaign materials of any kind in support for or in opposition to candidates for public office until such time as the Progressive Voters League and Jesse Jones, John Wiley Price, James Whitlow, Jean Swindell, Bill Forest and Frances Dirks shall fully comply with all the filing, reporting and disclosure provisions of Chapter 251, Sec. 251.001–251.019 of the Texas Election Code.

This provision is impermissibly vague and uncertain. It does not specify whether Price was enjoined in his capacity as a member of the Progressive Voters League, as a Dallas County commissioner, or as a private citizen. Moreover, this provision does not specifically limit the impermissible conduct to the dissemination materials relating to the Progressive Voters League. Accordingly, I would hold that the judgment of contempt is void for vagueness.

GONZALEZ, Justice, concurring.

I concur in the judgment of the court. However, there is an additional basis for holding the injunction void. The injunction violates state and federal guarantees of freedom of speech.

The trial court's May 2 oral injunction, insofar as it incorporated by reference the original temporary restraining order, was neither limited to "unlawful contributions" or "expenditures," nor punished Price for making "unlawful expenditures" or using "unlawful contributions." The judgment of contempt was based solely on Price's distribution of political slate cards.

Prior restraints upon constitutionally protected speech, whether legislatively or judicially fashioned, are subject to judicial scrutiny with a heavy presumption against their constitutional validity. *Iranian Muslim Org. v. City of San Antonio*, 615 S.W.2d 202, 205 (Tex.1981). *See Hajek v. Bill Mowbray Motors, Inc.*, 647 S.W.2d 253 (Tex.1983).

Freedom of expression has long been one of the most basic American freedoms. In *Gitlow v. New York*, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed.2d 1138 (1925), the United States Supreme Court decided that the First Amendment guarantees of free expression were part of the fundamental liberties protected against state action by the Fourteenth Amendment. Texas, however, had already decided the issue. In 1920, officers of a labor union were enjoined from "vilifying, abusing or using opprobrious epithets to or concerning" certain persons. In rejecting this assertion of judicial power, Chief Justice Phillips wrote:

Punishment for the abuse of the right [of free expression], not prevention of its exercise, is what the provision contemplates. There can be no liberty in the individual to speak, without the unhindered right to speak. It cannot co-exist with a power to compel his silence or fashion the form of his speech....

The theory of the provision [Tex. Const. Art. 1, § 8] is that no man or set of men are to be found, so infallible in mind and character as to be clothed with an absolute authority of determining

what other men may think, speak, write or publish; that freedom of speech is essential to the nature of a free state; that the ills suffered from its abuse are less than would be imposed by its suppression; and, therefore, that every person shall be left at liberty to speak his mind on all subjects, and for the abuse of the privilege to be responsible in civil damages and subject to the penalties of the criminal law.

*Ex Parte Tucker,* 220 S.W. 75, 76 (Tex. 1920). *See New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 720, 11 L.Ed.2d 686 (1964).

The constitutional right to express one's ideas has long been extended to the communication of ideas by handbills and literature, as well as by the spoken word. *See Jamison v. Texas,* 318 U.S. 413, 416, 63 S.Ct. 669, 671, 87 L.Ed. 869 (1943); *Hague v. C.I.O.,* 307 U.S. 496, 514–16, 59 S.Ct. 954, 963–64, 83 L.Ed. 1423 (1939); *Lovell v. City of Griffin,* 303 U.S. 444, 452, 58 S.Ct. 666, 669, 82 L.Ed. 949 (1938); *De Jonge v. Oregon,* 299 U.S. 353, 364, 57 S.Ct. 255, 259, 81 L.Ed. 278 (1937); *Grosjean v. American Press Co.,* 297 U.S. 233, 245–46, 56 S.Ct. 444, 447, 80 L.Ed. 660 (1936); *Near v. Minnesota,* 283 U.S. 697, 713–16, 51 S.Ct. 625, 630–31, 75 L.Ed. 1357 (1931).

The trial court's injunction is not authorized by Chapter 251 of the Election Code. Chapter 251 regulates political funds and campaigns. The other means to enforce the provisions of the Election Code for failure to designate a campaign treasurer provided in section 251.008 (civil remedy); section 250.009 (criminal penalty); section 251.014 (civil penalty for late filing); and 251.017 (regulation of illegal acts & the duties of the Secretary of State), are more than adequate to enforce the act without stifling free speech.

For the reason set out above, I would hold that the oral injunction, in addition to violating the requirements of *Ex Parte Slavin,* 412 S.W.2d 43 (Tex.1967), also violated state and federal guarantees of free speech, and was therefore not punishable by contempt.

KILGARLIN, J., joins in this concurring opinion.

MAUZY, Justice, concurring.

I concur in the result reached by the majority but would simply add that the fatal error in the trial court was not the issuance of the oral order, nor the time taken to reduce it to writing. The major flaw committed by the trial judge was the issuance of an ambiguous and vague written order. Relator's conduct appears from the record to be a clear violation of the court's oral mandate and should not be condoned. However, by handing down a written order that failed to satisfy the terms outlined in *Ex Parte Slavin,* 412 S.W.2d 43 (Tex.1967), this court has no choice but to reverse the contempt order.