In re Heydar ("Shaun") KHALEDI.

No. 04–04–00117–CV.

Court of Appeals of Texas,
San Antonio.

April 21, 2004.

78

Ted H. Roberts, Mary S. Roberts, M'Liss Christian, Law Offices of Ted H. Roberts, P.C., San Antonio, Donato D. Ramos, Law Offices of Donato D. Ramos,

Jose Angel Becerra, Campero & Associates, P.C., Laredo, for appellant.

Peter L. Kilpatrick, Luther H. Soules, III, David M. Evans, Sara Murray, Robinson C. Ramsey, Langley & Banack, Inc., San Antonio, Jeff D. Otto, Jessica Runyan Allen, Thompson, Coe, Cousins & Iron L.L.P., Austin, for appellee.

Sitting CATHERINE STONE, Justice, PAUL W. GREEN, Justice, SANDEE BRYAN MARION, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

On May 5, 2003, the trial court signed an Amended Order on Applications for Temporary Injunction ("injunction order") that required relator to, *inter alia,* subordinate his lien on certain property to a lender selected by the real parties in interest (hereinafter the "plaintiffs"). On November 19, 2003, this court modified the injunction and affirmed the injunction as modified. See *Khaledi v. H.K. Global Trading, Ltd.,* 126 S.W.3d 273 (Tex.App.-San Antonio 2003, no pet.). On February 19, 2004, the trial court signed an Order Granting Plaintiffs' Motion for Contempt for Defendant's Failure to Comply With Order to Execute Subordination Agreement ("contempt order"). On February 23, 2004, relator filed his amended application for writ of habeas corpus. We order relator discharged.

## DISCUSSION

The purpose of a writ of habeas corpus in civil matters is to command the

release of a person who is incarcerated "by virtue of an order, process, or commitment issued by a court or judge because of the violation of an order, judgment, or decree previously made, rendered, or entered by the court or judge in a civil case." TEX. GOV'T CODE ANN. § 22.221(d) (Vernon 2004). To grant the application for writ of habeas corpus, relator must prove the order of contempt is void on its face or so completely without evidentiary support as to deprive relator of due process of law. *See Ex parte Davila,* 718 S.W.2d 281, 282 (Tex. 1986) (orig. proceeding); *Ex parte Barnett,* 600 S.W.2d 252, 254 (Tex.1980) (orig. proceeding); *Ex parte Gordon,* 584 S.W.2d 686, 688 (Tex.1979) (orig. proceeding); *Ex parte Dolenz,* 893 S.W.2d 677, 680 (Tex. App.-Dallas 1995) (orig. proceeding). A contempt order is void absent proof that an individual has violated a trial court's temporary injunction. *Ex parte Williams,* 690 S.W.2d 243, 244 (Tex.1985) (orig. proceeding); *Ex parte Green,* 603 S.W.2d 216, 217–18 (Tex.1980) (orig. proceeding); *see also In re Long,* 984 S.W.2d 623, 626–27 (Tex.1999). Our purpose is not to determine the individual's guilt or innocence, but only to determine whether he has been unlawfully confined. *Ex parte Haskin,* 801 S.W.2d 12, 13 (Tex.App.-Corpus Christi 1990, orig. proceeding). Here, we determine only if the contempt order is void because relator has been confined with no evidence of contempt to support his confinement. *See Ex parte Chambers,* 898 S.W.2d 257, 259–260 (Tex.1995).

On January 28, 2004, plaintiffs submitted to relator for his signature a subordination agreement in favor of Merrill Lynch Business Financial Services, Inc. ("Merrill Lynch"). Relator refused to sign the document. On February 4, 2004, plaintiffs filed an Emergency Motion for Contempt and/or for Sanctions for Defendant's Failure to Comply With Orders to Execute Subordination Agreement ("contempt mo-

tion"). In their contempt motion, plaintiffs complained that relator failed to comply with the trial court's mandatory injunction order because he refused to sign the Merrill Lynch subordination agreement. Plaintiffs asked for various sanctions against relator, including that he be remanded into the custody of the Webb County sheriff until such time as he executed the Merrill Lynch agreement. On February 6, 2004, relator filed an Emergency Motion for Determination of Terms of Subordination Agreement, in which relator stated he "wants to ensure Merrill Lynch is fully informed of all material facts and pending legal proceedings in that, on final adjudication, his court ordered resubordination on the Spivey Drive warehouse may be found to be in error due to his subordination in the year 2000 for the benefit of International Bank of Commerce."

On February 19, 2004, the trial court heard the contempt motion. At this hearing, the trial court heard arguments from counsel, but repeatedly stated it would not take evidence. The trial court stated it would not take evidence because its decision would be based entirely upon a reading of this court's opinion in *Khaledi v. H.K. Global Trading, Ltd.,* in which this court held that the injunction order preserved "the status quo by ordering that the status of [relator's] lien positions continue as they existed when the parties executed the various closing documents." 126 S.W.3d at 284. Relator's counsel asserted his client was prepared to sign a subordination agreement, but only one that contained language that protected his rights in the underlying litigation. According to relator's counsel, the Merrill Lynch subordination agreement did not protect relator's right to challenge, at trial, the requirement that he subordinate his lien. After reviewing this court's opinion,

the trial court stated, "it will be the order of this Court that [relator] is to execute the [Merrill Lynch] document as submitted...." The court then ordered that relator "be turned over to the custody of my Court Bailiff, and if he doesn't execute this [Merrill Lynch] document by 5:00, then he needs to be remanded to the custody of the Webb County Sheriff." At some point before 5:00 p.m., the trial court signed the contempt order, in which the court found that relator was in contempt of the injunction order as a result of his failure to sign the Merrill Lynch agreement. Shortly before 5:00 p.m., court reconvened, at which time relator presented to the trial court a signed and notarized subordination agreement that differed from the Merrill Lynch subordination agreement. Plaintiffs' counsel objected, but agreed to contact Merrill Lynch to ascertain whether the agreement signed by relator was acceptable. The trial court then asked relator whether he would sign the Merrill Lynch agreement; relator refused; and the court remanded him to custody. At the conclusion of the hearing, relator filed an application for writ of habeas corpus with the trial court, which the court set for hearing the next day. Relator also filed an application for writ of habeas corpus with this court.

The next day, court reconvened at which time the trial court considered relator's application for writ of habeas corpus. At this hearing, relator argued that the contempt order was void because it was signed without evidence that he disobeyed the court's injunction order by refusing to sign the Merrill Lynch subordination agreement. Relator submitted two signed subordination agreements that differed from the Merrill Lynch subordination agreement attached to the contempt order. Relator argued these agreements satisfied the injunction order's mandate that he subordinate his Spivey Drive lien. Plaintiffs' counsel argued, without evidentiary support, that Merrill Lynch would not accept any subordination agreement other than the one attached to the trial court's contempt order. The trial court denied relator's application for writ of habeas corpus.

On February 23, 2004, relator filed an amended application for writ of habeas corpus with this court. In the proceeding before this court, plaintiffs argue that relator's refusal to sign the Merrill Lynch subordination agreement amounts to a failure to comply with the injunction order. This argument assumes that the Merrill Lynch agreement is the *only* subordination agreement that would satisfy the terms of the injunction order. However, the injunction order did not require relator to sign the Merrill Lynch agreement or any specific subordination agreement. Instead, the injunction order required relator to "subordinate [his] deed of trust lien in the Spivey Drive Property to a lender selected by Plaintiffs."

■■■ A contempt order must be based on one's "disobedience of an order that spells out 'the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him.'" *Ex parte Padron*, 565 S.W.2d 921, 921 (Tex.1978) (orig. proceeding). To sentence a person to confinement for disobedience of a prior order, such prior order "'must carry with it no uncertainty, and must not be susceptible of different meanings or constructions, but must be in the form of a command, and when tested by itself, must speak definitely the meaning and purpose of the court in ordering.'" *Ex parte Slavin*, 412 S.W.2d 43, 45 (Tex. 1967) (orig. proceeding); *see also Padron*, 565 S.W.2d at 921.

Here, relator signed and submitted to the trial court two subordination agree-

ments. Because no evidence was taken at the hearing on the contempt motion, there is no evidence to support a finding that either of relator's subordination agreements do not satisfy the terms of the injunction order. Nothing in the record indicates whether plaintiffs' lender, Merrill Lynch, would have accepted or rejected relator's proposed agreements or that any language in these agreements was inadequate to complete the required subordination to Merrill Lynch. On the other hand, nothing in the record supports relator's contention that he has complied with the injunction order merely because he submitted two signed subordination agreements containing language to his satisfaction.

Because no evidence supports a finding that relator's failure to sign the Merrill Lynch agreement constitutes a violation of the injunction order, relator cannot be held in constructive contempt for failing to sign the Merrill Lynch agreement. *See Ex parte Padron,* 565 S.W.2d at 924.

█ Plaintiffs also assert that relator's refusal to sign the Merrill Lynch agreement amounted to direct contempt. A trial court may not convert constructive contempt into direct contempt if an individual does no more than assert his defense to or an explanation of the charge against him. *See Ex Parte Harvill* 415 S.W.2d 174, 177 (Tex.1967); *Padron,* 565 S.W.2d at 924. Although relator refused to sign the Merrill Lynch agreement in the court's presence, he did so as the basis of his defense to the charge that he had disobeyed the injunction order. Therefore, relator cannot be held in direct con-

tempt for asserting his defense to the charge against him.

Our conclusion should not be interpreted as a holding that relator ultimately cannot be held in contempt for refusing to sign the Merrill Lynch subordination agreement. The injunction order and our holding in *Khaledi v. H.K. Global Trading, Ltd.* require relator to sign a subordination agreement—a command with which relator agrees he must comply. Our conclusion here is only that the contempt order is void because it is not supported by evidence that relator disobeyed the injunction order.

For the reasons stated above, relator is ordered released.