**IN RE: Danny HIGHTOWER**

No. 06-17-00088-CV

Court of Appeals of Texas, Texarkana.

Date Submitted: September 20, 2017

Date Decided: September 21, 2017

Craig Jackson, Brewer Jackson & Lang, PC, Grapevine, TX, for appellant.

Judy Hodgkiss, Sarah Kaminar, The Moore Law Firm, LLP, Paris, TX, for appellee.

Before Morriss, C.J., Moseley and Burgess, JJ.

## OPINION

Opinion by Justice Moseley

Danny Hightower, relator, has filed a petition for writ of habeas corpus[1] seeking relief from the trial court's judgment of contempt and its order of commitment,

---

1. Hightower filed a petition for writ of habeas corpus or, alternatively, writ of mandamus. Under the facts of this case, we construe this filing as a petition for a writ of habeas corpus.

both arising out of the divorce proceedings between his son, Ashley, and the real party in interest, Megan Hightower (Megan). Hightower contends that the trial court deprived him of due process (1) when it held him in contempt of a preliminary ruling of the court that had not been reduced to a written order of the court and (2) when it provided him with a show cause order that failed to put him on notice of what order he allegedly violated, how he allegedly violated the order, and that he might be held in contempt. Hightower also contends that the trial court's judgment of contempt is void because it is not based on the violation of a written order of the court. We agree that the judgment of contempt is void and therefore order that Hightower be discharged.

## I. Background

Shortly before filing suit for divorce in August 2016, Megan and Ashley purportedly executed two warranty deeds transferring two tracts of community property to Hightower. In December 2016, Megan joined Hightower as a third party defendant in the divorce and sought recovery of the properties, to which Hightower filed an answer. On June 20, 2017, a final hearing on the divorce was held in which the trial court considered all of the issues involved in the proceeding. On June 30, 2017, the trial court sent a document with the heading

**NOTICE OF DRAFT DIVORCE TERMS NOTICE OF HEARING REGARDING RECEIVER**

(Draft Divorce Terms) to the parties. In relevant part, the Draft Divorce Terms provide:

Non-homestead Real estate to be sold by Receiver, pay [Hightower] and/or

2. Hightower contends, and Megan does not dispute, that no exhibits were attached to the

bank holding first lien. Net proceeds to be deposited in Court and divided 50% Ashley 50% Megan. Original lender to be paid to date of closing. [Hightower] to be paid actual cash paid to an original lender. Lake Lot $47,350.65. Bogota Building $748.03. White Property $6774.93. [Hightower] is second tier creditor behind original lender, taxes and usual costs of sale.

Deeds by Ashley to Danny are voided and real estate is community owned.

. . . .

**Please note that this is draft [sic], subject to revision, and dependent upon Nancy and [Hightower] agreeing to release of Megan. This is also dependent upon Attorney Stovall accepting plan of immediate sale of real estate to which they hold a valid lien against.**

On August 7, 2017, Hightower conveyed the two tracts to Dennis Cameron. On August 9, 2017, the trial court entered a show cause order requiring Hightower and Cameron to

show cause why the two instruments attached hereto as Exhibit A and Exhibit B[2] should not be declared **VOID** and in violation of valid Court Orders [in this cause] and why the Court should not enter such other and further orders as may be required to preserve the jurisdiction of the Court over the real estate described in said Exhibits.

A show cause hearing was held on August 11, 2017, and the trial court signed a judgment of contempt on August 15, 2017. In the judgment of contempt, the trial court repeatedly refers to the Draft Divorce Terms as "the Court's ruling on June 30, 2017," or "the Court's ruling," and attaches the Draft Divorce Terms as Exhibit 2,

show cause order.

noting that it is "[a] copy of the Court's ruling." The judgment of contempt provided

It is therefore ordered, adjudged, and decreed by the Court that ... Hightower is in contempt of this Court for the violation of the Court's ruling in each of the following respects:

· 1. On August 7, 2017, ... Hightower conveyed the real property having the legal descriptions as set forth in Exhibit A to ... Cameron in violation of the Court's ruling on June 30, 2017.

2. On August 7, 2017, ... Hightower conveyed the real property having the legal descriptions as set forth in Exhibit B to ... Cameron in violation of the Court's ruling on June 30, 2017.

The Court specifically finds that [Hightower] is in contempt for each violation enumerated above.

The trial court ordered Hightower to be confined in the Titus County Jail for not more than twelve months or until he purged himself of the contempt as provided in the order. Also on August 15, 2017, the trial court entered its final decree of divorce in which it granted Megan's petition for divorce, voided the conveyances of the two tracts, and ordered Hightower to sign special warranty deeds conveying his interest in the two tracts to Brett Thomas, who had been appointed receiver in the case. On August 16, 2017, the trial court signed an order of commitment directing the Titus County Sheriff to arrest and commit Hightower, unless and until he signed the special warranty deeds conveying his interest in the two tracts to Thomas. We granted Hightower's emergency motion and stayed the judgment of contempt and commitment order pending our resolution of his petition for writ of habeas corpus.

## II. The Draft Divorce Terms Were Not Enforceable by Contempt

In his third issue, Hightower complains that he was deprived of due process and that the judgment of contempt is void because it is based on alleged violations of the Draft Divorce Terms, and not a written order of the court. He also complains that even if this document is construed as an order of the court, it fails to spell out the terms of compliance in clear and unambiguous terms.

When a contempt judgment provides that a contemnor is to be confined, it is reviewable only by a petition for writ of habeas corpus. *Witcher v. Bennett*, No. 06-05-00069-CV, 2006 WL 42232, at *1 (Tex. App.—Texarkana Jan. 10, 2006, pet. denied) (mem. op.); *see* TEX. GOV'T CODE ANN. § 22.221(d) (West 2004) (court of appeals may issue writ of habeas corpus for a person "restrained in his liberty"). It is not necessary that the person be actually confined in jail for the writ to issue. *See Ex parte Williams*, 690 S.W.2d 243, 244 (Tex. 1985) (orig. proceeding) (writ may issue even though person is released on bail or personal bond); *In re Gonzalez*, 993 S.W.2d 147, 158 (Tex. App.—San Antonio 1999, no pet.) (issuance of a capias is a sufficient restraint on liberty to support a petition for writ of habeas corpus); *Ex parte Rosser*, 899 S.W.2d 382, 385 n.6 (Tex. App.—Houston [14th Dist.] 1995, orig. proceeding) (same).[3] In a habeas corpus proceeding, we do not determine the guilt or innocence of the relator, rather we are

---

3. Megan argues that to be entitled to a writ of habeas corpus, Hightower must show that he has actually been arrested, citing *Ex parte Calhoun*, 127 Tex. 54, 91 S.W.2d 1047, 1048–49 (1936) (orig. proceeding), and *Ex parte Crawford*, 506 S.W.2d 920 (Tex. Civ. App.—Tyler 1974, orig. proceeding) (per curiam).

However, in both of these cases, although a judgment of contempt was entered, no order of commitment was issued. *Calhoun*, 91 S.W.2d at 1048–49; *Crawford*, 506 S.W.2d at 921. In *Calhoun*, the Texas Supreme Court stated, "It is not required that the applicant

"only to ascertain whether the relator has been unlawfully" restrained in his liberty. *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979) (orig. proceeding). It is the relator's burden to show that the judgment or order is void, and not merely voidable. *In re Coppock*, 277 S.W.3d 417, 418 (Tex. 2009) (orig. proceeding). "An order is void if it is beyond the power of the court to enter it, or if it deprives the relator of liberty without due process of law." *Id.* (citing *Ex parte Barnett*, 600 S.W.2d 252, 254 (Tex. 1980) (orig. proceeding)).

 For an order to be enforceable by contempt, it "must set out the terms of compliance in clear and unambiguous terms." *Id.* (citing *Ex parte Brister*, 801 S.W.2d 833, 834 (Tex. 1990) (orig. proceeding)). Further, "a person cannot be sentenced to confinement unless the order unequivocally commands that person to perform a duty or obligation." *Id.* (citing *Ex parte Padron*, 565 S.W.2d 921, 921 (Tex. 1978) (orig. proceeding)). Command language in the order "is essential to create an order enforceable by contempt." *Id.* at 419 (citing *Ex parte Gorena*, 595 S.W.2d 841, 845 (Tex. 1979) (orig. proceeding); *Padron*, 565 S.W.2d at 924). Moreover, to support a contempt order or judgment, the order must be written, signed by the trial court, and entered upon the record. *See Ex parte Price*, 741 S.W.2d 366, 367–68 (Tex. 1987) (orig. proceeding); *Ex parte Padron*, 565 S.W.2d 921, 924 (Tex. 1978) (orig. proceeding). This is because "[o]ne who is committed to jail for civil contempt should be able to find somewhere in the record the written order," which gives the requirements of compliance in clear, specific, and unambiguous terms so the person knows exactly what duties or obligations are imposed upon him. *Padron*, 565 S.W.2d at 921, 924 (citing *Ex parte Slavin*, 412 S.W.2d 43, 44 (Tex. 1967) (orig. proceeding)); *Price*, 741 S.W.2d at 367.

In this case, the trial court adjudged Hightower in contempt for violating its Draft Divorce Terms and sentenced him to confinement for violating the same. However, by its own terms, this document was not an order of the court. Rather, it was a "draft" that was "subject to revision" and dependent on the agreement of certain parties to release others and a lienholder to accept the plan to sell certain real estate. In addition, although the judgment of contempt and order of commitment required Hightower to execute special warranty deeds in favor of Thomas in order to purge himself of the contempt, the Draft Divorce Terms contained no such requirement. In fact, the Draft Divorce Terms do not require Hightower to do anything at all. As such, even if we were to construe this document as an order of the court, there is no command language that sets out the terms of compliance required of Hightower in clear and unambiguous language.[4]

---

for a writ of habeas corpus be actually confined in a jail. Any character of restraint which precludes absolute and perfect freedom of action will justify the issuance of the writ." *Calhoun*, 91 S.W.2d at 1048 (citing *Ex parte Snodgrass*, 43 Tex.Crim. 359, 65 S.W. 1061 (1901) (orig. proceeding)). In this case, the trial court entered an order of commitment in addition to the judgment of contempt.

**4.** Megan argues that because Hightower had participated in various hearings and the Draft Divorce Terms provided that the non-homestead property was to be sold by the receiver, Hightower was bound by the trial court's ruling. However, as Megan admits, the trial court had not entered its final decree of divorce at the time of Hightower's conveyance. Until the final decree of divorce was signed, the trial court's ruling was subject to revision. Megan also argues that the trial court entered an order on December 12, 2016, requiring Hightower to convey the two tracts to the receiver. However, the judgment of contempt only adjudged Hightower in contempt of, and punished him for failing to obey, the Draft Divorce Terms, not any prior order.

Since the Draft Divorce Terms were not an order of the court and did not set out the terms of compliance by clear and unambiguous terms, it was not enforceable by contempt. *Coppock*, 277 S.W.3d at 418; *Price*, 741 S.W.2d at 367–68. Therefore, we sustain Hightower's third issue,[5] and we find that the trial court's judgment of contempt is void. Accordingly, relator is ordered discharged.

---

**5.** Since we have found that the Draft Divorce Terms were not enforceable by contempt, we need not address Hightower's remaining issue.