**Ex parte Kimberly Diane Cain WALDREP.**

**No. 10–96–209–CV.**

Court of Appeals of Texas,
Waco.

Nov. 6, 1996.

Stephanie Imbrie, James & Thibodeaux, Bryan, for Relator.

Bryan F. Russ, Jr., Palmos, Russ, McCullough & Russ, Hearne, for Real Party in Interest.

Lee Scott Hurley, Sheriff, Robertson County, Franklin, for Respondent.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

---

40. *Id.*

## OPINION

DAVIS, Chief Justice.

At a hearing on the afternoon of August 19, 1996 the trial court orally ordered Kimberly Waldrep to deliver a 1985 GMC pickup truck to her estranged husband Leroy Waldrep at his work place in Hearne by 5:00 p.m. that day. Rather than surrendering the vehicle, she inflicted some $5,000 worth of damage to it. The court held her in contempt and ordered her confined in the Robertson county jail for forty-five days, but provided that she could purge herself of the contempt by paying $5,500 for the damages, court costs and attorney's fees by October 1, or $5,555 thereafter. Waldrep claims that her confinement is illegal because she has been held in constructive contempt for violating an oral order. She is correct under the plain language of the controlling Texas Supreme Court case law and, so, we grant her petition and order her released.

Kimberly and Leroy are in the process of divorcing. The court convened on August 19 to hear the parties' motions for temporary orders. During the hearing, Leroy testified that Kimberly had taken a 1985 GMC "Dooley" pickup truck that he normally drove and refused to return it to him. He indicated that he had possession of a 1982 Chevrolet pickup that she usually drove. Leroy requested that the court order Kimberly to return the Dooley pickup truck to him.

The last witness at the hearing, David Shannon, Leroy's employer, began his testimony at 3:00 p.m. Thirteen pages later in the statement of facts, the hearing concluded with the following exchange:

> THE COURT: Exchange the vehicles at five o'clock this afternoon. Mr. Shannon, before you leave, I'm going to have the parties exchange the vehicles at your shop.... And I expect everybody to be nice....
>
> [Kimberly's Attorney]: [M]y client is standing here begging me about the 1982 pick-up. She knows what it can and cannot do.... It's not dependable, and I would request that the Court allow her [to] keep the other vehicle until that one can be proven to be dependable. She is going to

be left essentially without a vehicle to take the children unless we can make that determination, and I would ask the Court just to give us that much leeway.

> THE COURT: I am expecting, Mr. Waldrep, for this to be in a dependable, running condition, because your children are going to be in there, and I expect it to be in full, dependable condition.... If it's not, then I am going to hear back from everyone. Okay?

.    .    .    .    .

> [Kimberly's Attorney]: Your Honor, when should we let you know about the pick-up if it's not in working condition?
>
> THE COURT: I don't care, whenever you want to. I'm just saying that they exchange it at five o'clock this afternoon. Yes, sir?
>
> [Leroy's Attorney]: I appreciate the Court's orders. Would there be anything wrong perhaps with Mr. Shannon inspecting that vehicle before it leaves here today? Because, clearly, I'm not saying she would do it, but she could take that vehicle and do something to it and then say it's not in dependable working order.
>
> THE COURT: I have a note to tell everyone that as bad as we all need working condition vehicles, we don't need to do anything intentional to them between here and Hearne. Okay? And I'm not making any advance accusations toward either one of you, but we have missing property already and a sense of dislike here that is absolutely as obvious as my lack of hair. Okay? ... So y'all don't like each other, but I don't care if you like each other. I happen to protect the children, and getting back to this property, I don't want any damage to any property.... Check [the 1982 pick-up] and make sure the thing is in good running and dependable condition, and y'all make that exchange at five o'clock this afternoon.

.    .    .    .    .

> [Kimberly's Attorney]: If it doesn't work, Your Honor, does she have to exchange it? She swears to me that that pick-up doesn't work, the pick-up they are

trying to give her, the '82 pick-up, has a knock in it and it doesn't work.

. . . . .

THE COURT: Mr. Waldrep, ... I shouldn't have to tell you this. She needs a good, workable, dependable vehicle.

. . . . .

[Kimberly's Attorney]: If it doesn't work, can she keep—

THE COURT: No. It is your duty to have her a dependable, working vehicle.

Contrary to the Court's order, Kimberly intentionally damaged the GMC Dooley, and Leroy filed a motion to hold her in contempt on August 23, alleging that she had driven the truck into the Brazos River. On August 26, the court signed a judgment of contempt, finding that Kimberly had "specifically violated the Order of the Court in that she damaged the 1985 GMC Pickup Truck by running into the Brazos River Bridge and did not return the vehicle at 5 o'clock p.m. on August 19, 1996."[1] Her punishment, as set out above, was confinement in the Robertson county jail for forty-five days unless she purged herself by paying $5,500 by October 1, or $5,555 thereafter.

On September 24, Kimberly filed a petition for a writ of habeas corpus with this court. TEX.R.APP.P. 120. For support, she relies primarily on *Ex parte Price*, 741 S.W.2d 366 (Tex.1987). In *Price*, the trial court issued an oral injunction on May 2, Price violated the injunction on May 3, the other party filed a motion for contempt on May 6, and the court reduced the oral injunction to writing on May 9. After a hearing on May 23, the court found Price in contempt for his May 3 conduct and sentenced him to 96 hours in jail. The Supreme Court found the contempt order "void insofar as it is based upon the May 2, 1986 oral order." *Id.* at 367. More recently, the Court has stated that a person "cannot be held in constructive contempt of court for actions taken prior to the time that the court's order is reduced to writing." *Ex parte Chambers*, 898 S.W.2d 257, 262 (Tex. 1995).

Under *Price* and *Chambers*, violations of an oral order are not subject to constructive contempt punishment.[2] We find *Price* procedurally identical to this case. Thus, Kimberly is entitled to the relief she seeks and we declare the judgment holding her in contempt to be void. *Id.*; *Price*, 741 S.W.2d at 367. Kimberly's petition for a writ of habeas corpus is granted and she is ordered discharged from custody.

VANCE, Justice, dissenting.

May a litigant be held in contempt for intentionally disobeying an oral order which she acknowledges to be clear, specific, and unambiguous? I believe the facts of this case require that the answer be "yes."

Kimberly makes no pretense—either in her application for writ of habeas corpus or in her oral argument—that she was denied due process. She acknowledges that the court ordered her to return the vehicle by 5 p.m. and that she did not do so. Kimberly makes no argument that the court's oral order lacked specificity, that it was ambiguous, or that she misunderstood what she had

---

1. Although the judgment reflects that the hearing was held on August 26 and the judgment was "SIGNED on this the 26th day of August, A.D. 1996", the judgment was filed stamped by the district clerk on September 9 and the docket sheet reflects that the hearing and ruling occurred on September 9. "[I]n the absence of a recital showing on the face of the judgment ... that the judgment was signed on a different date, the date of rendition as recited therein governs and controls and ... such date of rendition may not be impeached for purposes of appeal by affidavits or otherwise, or by anything short of the amendment of the judgment itself." *Heard v. Heard*, 305 S.W.2d 231, 235 (Tex.Civ.App.—Galveston 1957, writ ref'd). Thus, we must presume that the docket entry is erroneous.

2. Actually, the facts in *Price* make the court's ruling even stronger. The oral injunction Price violated was a continuation of an earlier *written* temporary restraining order. *Ex parte Price*, 741 S.W.2d 366, 367 (Tex.1987). In the opinion, the court block-quotes the provision of the TRO specifying the acts Price was prohibited from taking. *Id.* Thus, Price had a written document explaining the terms of the injunction available to him. *Id.* However, the contempt judgment was based strictly on his violation of the oral order, so the court's ruling is supported only by its prohibition on constructive contempt based on an oral order.

been ordered to do. Instead, she argues only that a person may never be held in constructive contempt of an oral order.

*Ex parte Slavin,* 412 S.W.2d 43, 44 (Tex. 1967), is the case frequently cited for the degree of specificity required of a court order:

> It is an accepted rule of law that for a person to be held in contempt for disobeying a court decree, the decree must spell out the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him.

When the language of the court's order is equivocal or ambiguous, the order is unenforceable by contempt. *Id.* at 45. Because the written order in *Slavin* was subject to two interpretations, it was unenforceable by contempt. *Id.* No such argument exists in the facts before us.

Instead, Kimberly relies on *Ex parte Price,* 741 S.W.2d 366 (Tex.1987), which in turn relied on *Ex parte Slavin. Ex parte Price* involved an oral order which was attacked for being overbroad and vague and for being violative of Price's rights to free speech, free press, and political association. *Id.* at 367. The majority opinion in *Price* cites the general rule of *Slavin* that the order must be "clear, specific and unambiguous." *Id.* The majority then states:

> A corollary to this rule is that a party who is committed to jail for constructive civil contempt should be able to find somewhere in the record the written order which meets *Slavin*'s requirements. It is this written order, signed by the court and entered upon the minutes, which evidences a parties' rights and duties. "Oral orders

are poor substitutes for the requirement of one final judgment." *Ex Parte Padron,* 565 S.W.2d 921, 924 (Tex.1978). *See also Ex Parte Wilkins,* 665 S.W.2d 760 (Tex. 1984).

*Id.* at 367–68.[1]

Justice Spears concurred in the result because the oral order did not satisfy the notice and specificity requirements, but disagreed "that an oral order which is reduced to writing within a reasonable time can never satisfy the requirements of *Ex parte Slavin.*" *Id.* (Spears, J., concurring). Noting the potential for "disastrous consequences" of such a rule in family-law proceedings, Justice Spears wrote:

> I would hold that oral orders must be reduced to writing within a reasonable time under *Ex parte Padron,* and must satisfy the notice and specificity requirements of *Ex parte Slavin.* I would further hold that when an unambiguous, specific oral order is preserved in the record, and the party charged with contempt had actual notice of the order, the court can enforce it by contempt proceedings for a reasonable time until a written order can be signed. *Ex Parte Wilkins,* 665 S.W.2d at 762 (Spears, J. concurring).

*Id.* at 368.

Kimberly also relies on *Ex parte Chambers,* 898 S.W.2d 257 (Tex.1995), which is cited in this court's majority opinion. *Chambers* involves convoluted facts and three separate orders of contempt. Chambers emptied a corporate bank account the day *before* the court ordered payment of a $3,000 fine. *Id.* at 262. He was eventually held in contempt for not paying the fine. The majority held that Chambers had successfully established

---

**1.** Neither *Ex parte Padron* nor *Ex parte Wilkins* mandates a written order and neither has similar facts to the situation before us. In the former, Padron established a complete defense to the charge that he had violated a written court order. *Ex parte Padron,* 565 S.W.2d 921, 924 (Tex. 1978). At the contempt hearing, the judge "placed Padron on trial for a different violation by summarily making a different oral order." *Id.*

In *Ex parte Wilkins,* 665 S.W.2d 760 (Tex. 1984), Wilkins was held in contempt for violating an oral order. The Supreme Court noted that no

written order was ever entered, nor was a statement of facts taken at the hearing in which the order was rendered. "Thus, there is no basis for determining whether the oral order meets the requirements of *Slavin.* This State cannot be allowed to operate under a system whereby its citizens may be punished by contempt for violation of an order, the exact terms of which exist solely in the memory of the trial judge and the movants for contempt." *Id.* Here, the "exact terms" exist in the statement of facts, in the subsequent order, and most importantly, in the mind of the *contemnor.*

an "inability to pay" defense, noting that Chambers emptied the account "before the fine issued." *Id.* Thus, the question was not whether the court's order was *oral* but whether Chambers could be held in contempt for disobeying a *nonexistent* order. The court's language that a person "cannot be held in constructive contempt of court for actions taken prior to the time that the court's order is reduced to writing" is dicta. *Id.*

Less than two hours after the judge ordered Kimberly to return the vehicle, she instead inflicted $5,000 damage to it. Kimberly concedes that she was ordered to deliver the vehicle and that she failed to do so. However, she argues that this case is not about her guilt or innocence nor is it about whether her conduct was intentional or flagrant. Rather, she says, she is immune because the order was oral.

I believe the notice and specificity requirements of *Ex parte Slavin* have been met. 412 S.W.2d at 44. The facts are distinguishable from those in *Ex parte Price* and I would follow the reasoning of Justice Spear's concurrence in *Ex parte Price.* 741 S.W.2d at 368. Because the majority holds otherwise, I respectfully dissent.