**In re R.E.D., Relator.**

No. 01–08–00727–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 5, 2009.

852

Karl E. Hays, Austin, TX, Robert J. Piro, Robert J. Piro, PLLC, Houston, TX, for Relator.

Daryl L. Moore, Daryl L. Moore, P.C., Marshall Davis Brown Jr., Pavlas & Brown, LLP, Houston, TX, for Real Party in Interest.

Panel consists of Justices TAFT, KEYES, and ALCALA.

## OPINION

EVELYN V. KEYES, Justice.

In this original proceeding, relator R.E.D. seeks a writ of habeas corpus to secure his release from a commitment order issued by the 312th Judicial District Court of Harris County. This commitment order arises from a motion for enforcement filed by the real party in interest, S.C.D., relator's estranged wife, who alleged that relator violated an agreed order that restricted both relator and S.C.D. from selling personalty or realty in either their separate or their community estates. In four issues, relator argues that the trial court's commitment order is void because (1) there is no proof that relator intentionally violated the agreed order; (2) real party in interest's motion to enforce the agreed order is defective and failed to give him fair notice of the charges against him; (3) the order relator is accused of violating is ambiguous and unclear; and (4) the trial court lacked jurisdiction to order that he be incarcerated until he pays $367,537.00 into the registry of the court.

We decline to issue the writ and withdraw our temporary order to stay enforcement of the trial court's commitment order.

## Background

Relator filed an original petition for divorce against S.C.D. on July 6, 2006. The parties jointly filed a motion entitled "Agreed Mutual Temporary Injunctions," which governed the parties' financial transactions during the interval between the initial filing and the final resolution of the divorce proceeding. In the joint motion on temporary injunctions, the parties agreed to the following language:

4.3 It is ordered that Petitioner, R.E.D. and Respondent S.C.D. are enjoined from:

. . . .

k. Selling, transferring, assigning, mortgaging, or in any other manner alienating any of the property of Petitioner or Respondent, whether personalty or realty, and whether separate or community, except as specifically authorized by order of this Court.

The trial court signed the order enforcing the parties' joint motion ("the agreed order") on July 31, 2006.

On May 5, 2008, S.C.D. filed her "Third Amended Motion for Enforcement, or in the Alternative, Motion for Clarification," alleging that relator had violated the agreed order. S.C.D. alleged that, on January 16, 2008, relator testified under oath before the trial court that he had sold stock valued at $600,000 from the parties' Ameritrade account.

The trial court convened an enforcement hearing on July 15, 2008 to determine whether relator had violated the agreed

order. Relator reiterated his prior testimony that he did sell stock from the parties' Ameritrade account, and he added that he sold the stock during the period between December 2007 and January 2008 because he "wanted to pay debt." However, relator disputed S.C.D.'s claim that the stock was valued at $600,000. He testified that he made a $200,000 payment to their children's trust from the proceeds of the sale because he "wanted to cut the interest amount down," although he admitted the payment was not due for another 12 months. He testified that he placed approximately $367,000 generated from the stock sale in a checking account.

Relator reiterated that he sold stock because he chose to sell the stock out of want rather than need, and he admitted that he had no authorization from S.C.D. or the trial court to do so. Relator also admitted that he could have sold stock that had already been stipulated as his separate property, but he decided to liquidate the Ameritrade account even though its characterization as separate or community property was in dispute.

Based on relator's testimony and other evidence presented at the hearing, the trial court found that relator had violated the agreed order and signed an order that included a written judgment of contempt. The trial court also signed a commitment order directing respondent, Harris County Sheriff Tommy Thomas, to take relator into custody and to confine relator for 10 days in the Harris County Jail. The commitment order also directed the sheriff to confine relator beyond the 10-day sentence until relator deposited the $367,000 generated from the stock sale into the trial court's registry. Relator filed a petition with this Court seeking a writ of habeas corpus along with a motion for temporary relief. On August 28, 2008, this Court granted temporary relief by staying the commitment order.

## Standard of Review on Habeas Corpus

Here, the agreed order relator was held in contempt for violating was issued pursuant to section 6.502 of the Texas Family Code. Section 6.502 provides, in relevant part:

### Temporary Injunction and Other Temporary Orders

(a) While a suit for dissolution of a marriage is pending and on the motion of a party or on the court's own motion after notice and hearing, the court may render an appropriate order, including the granting of a temporary injunction for the preservation of the property and protection of the parties as deemed necessary and equitable and including an order directed to one or both parties.

. . . .

(7) prohibiting the parties, or either party, from spending funds beyond an amount the court determines to be for reasonable and necessary living expenses[.]

TEX. FAM.CODE ANN. § 6.502 (Vernon 2006).

■ A trial court may enforce any temporary court order in a divorce suit by punishing a violation with contempt. TEX. FAM.CODE ANN. § 6.506 (Vernon 2006); *see also Ex parte Butler,* 523 S.W.2d 309, 311 (Tex.Civ.App.-Houston [1st Dist.] 1975, no writ) (court denied writ of habeas corpus after husband violated clearly defined temporary trial court order and wife filed motion for contempt). Relator is charged with constructive contempt. Constructive contempt, as opposed to direct contempt, involves conduct by the relator that occurs outside the presence of the trial court. *Ex parte Gordon,* 584 S.W.2d 686, 688 (Tex. 1979). Such conduct includes the relator's failure to comply with a court order. *Id.*

▮ A judgment of contempt may be either civil or criminal. *Ex parte Werblud,* 536 S.W.2d 542, 545 (Tex.1976). The purpose of civil contempt is remedial and coercive. *Id.* A judgment of civil contempt exerts the judicial authority of the court to persuade the contemnor to obey an order of the court when obedience will benefit an opposing litigant. *Id.* "Imprisonment is conditional upon obedience and therefore the civil contemnor 'carries the keys of (the) prison in (his) own pocket.'" *Id.* (quoting *Shillitani v. United States,* 384 U.S. 364, 368, 86 S.Ct. 1531, 1534, 16 L.Ed.2d 622 (1966)). When a relator has committed civil contempt, he may procure his release by compliance with the provisions of the court's order. *Id.* Criminal contempt, by contrast, is punitive in nature in that the sentence is not conditioned upon a promise of future performance; rather, the contemnor is being punished for a completed act that affronted the dignity and authority of the court. *Werblud,* 536 S.W.2d at 545 (citing *Shillitani,* 384 U.S. at 368, 86 S.Ct. at 1534). Here, the judgment of contempt entered against relator by the trial court is a judgment of both civil and criminal contempt because it both punishes relator by ordering him confined for 10 days for his violation of the agreed order and coerces his compliance with the agreed order by ordering his continued confinement until he places the $367,000 received from the stock sale into the registry of the court.

▮ We issue a writ of habeas corpus to release a relator from the trial court's commitment order only when the order is void. *Ex parte Barnett,* 600 S.W.2d 252, 254 (Tex.1980); *In re Parr,* 199 S.W.3d 457, 460 (Tex.App.-Houston [1st Dist.] 2006, no pet.). In order to hold that the trial court's commitment order is void, we must find either the trial court lacked jurisdiction to enforce the order or the trial court "deprived relator of his liberty without due process." *Barnett,* 600 S.W.2d at 255 (citing *Ex parte Gordon,* 584 S.W.2d 686 (Tex.1979)).

▮ To satisfy the due process requirements necessary to support a criminal contempt conviction, there must be proof beyond a reasonable doubt that (1) the court issued a reasonably specific order, (2) the contemnor violated the court's order, and (3) the contemnor's violation was a willful act. *Ex parte Chambers,* 898 S.W.2d 257, 259 (Tex.1995). We do not determine whether the relator is guilty or innocent of contempt; our role, instead, is to determine whether the relator has been illegally imprisoned. *Gordon,* 584 S.W.2d at 688. The order is presumed to be valid until the relator discharges his burden of proving otherwise. *In re Turner,* 177 S.W.3d 284, 288 (Tex.App.-Houston [1st Dist.] 2005, orig. proceeding). Unless the petition for writ of habeas corpus shows that the judgment of contempt is void on its face or is so completely without evidentiary support as to be rendered void, the petition must be denied. *Butler,* 523 S.W.2d at 311. An appellate court lacks jurisdiction to weigh the proof to determine whether it preponderates for or against the relator; it has jurisdiction only to determine whether the judgment is void. *Chambers,* 898 S.W.2d at 259–60.

### Fair Notice of the Charges

▮ In his second issue, relator argues that S.C.D.'s motion for enforcement, upon which the trial court's commitment order is based, is defective and does not provide relator fair notice of the charges against him. Relator argues that S.C.D.'s motion to enforce merely charged relator with testifying that he sold the Ameritrade stock. Relator argues that S.C.D.'s motion was defective because the allegations made in the motion to enforce neither

charged him with violating the agreed order nor identified the particular stock transactions he made.

Due process requires that a constructive contemnor must have full notice of any charges against him and a reasonable opportunity to rebut those charges. *Gordon,* 584 S.W.2d at 688. The trial court must issue adequate legal process to apprise the contemnor of the charges. *Id.; Ex parte Barlow,* 899 S.W.2d 791, 795 (Tex.App.-Houston [14th Dist.] 1995, orig. proceeding). A judgment of contempt entered without proper notification is a nullity. *Gordon,* 584 S.W.2d at 688; *Barlow,* 899 S.W.2d at 795.

Here, S.C.D. specifically set out, in her motion to enforce, the language from the agreed order for mutual temporary injunctions that relator helped to prepare:

4.3 It is ordered that Petitioner, R.E.D. and Respondent S.C.D. are enjoined from:

. . . .

k. Selling, transferring, assigning, mortgaging, or in any other manner alienating any of the property of Petitioner or Respondent, whether personalty or realty, and whether separate or community, except as specifically authorized by order of this Court.

S.C.D. alleged in her "Third Amended Motion for Enforcement, or in the Alternative, Motion for Clarification":

On January 16, 2008, Petitioner R.E.D. testified before this Court that he had sold all issues of stock with the exception of three issues in the parties' Ameritrade account and that the sale generated close to $600,000.

The motion to enforce specifically alleged that relator admitted under oath that he had sold $600,000 in stock from the parties' Ameritrade account, thus giving relator notice of the alleged non-compliance-relator's admission that he sold personalty from a community asset. The motion to enforce also alleged a specific date, a specific account, and a specific monetary sum sufficient to give relator fair notice of the charges against him. Because of the specificity of the allegations made, relator had sufficient notice of the charges asserted against him. We conclude that S.C.D.'s motion is not defective and that it provides relator with the necessary details to give relator fair notice.

Relator also had an opportunity to defend himself against the charges made against him in the motion to enforce. On July 15, 2008, the trial court held an enforcement hearing on S.C.D.'s motion to enforce. At the hearing, the following exchange took place between relator and counsel for S.C.D.:

[S.C.D.]: This is the fourth hearing we've had in this matter, where you've spoken about the $600,000 that you took out of Ameritrade, correct?

[Relator]: I suspect that's correct.

[S.C.D.]: Excuse me. Why not? Do you recall my question?

[Relator]: Will you be kind enough to repeat it?

[S.C.D.]: This is at least, today, this hearing is at least the third time, at least the third time you've testified that you withdrew $600,000 from the Ameritrade account, correct?

[Relator]: I believe that's correct.

[S.C.D.]: Now the first time you testified to that was back in January of '08, that would have been nearer in time that the Ameritrade account was, the stocks were negotiated out of it?

[Relator]: Yes.

Counsel for S.C.D. began to ask relator about the location and the amount of the

remaining sums available from the Ameritrade account sales.

> [S.C.D.]: What I think you've told me, and if I come up anywhere wrong, stop me, I think you told us under oath more than once, even today as a matter of fact, that you sold about $600,000 worth of Ameritrade stock in December in '07. Is that what you testified to?
>
> [Relator]: That is a fact, yes.
>
> [S.C.D.]: Okay. I think you've testified that after looking at all of the Frost Bank account statements from December through April of this year, that we can, that you could only identify $367,000 that was deposited in Frost Bank, excuse me, that Frost Bank account, correct?
>
> [Relator]: Correct.

Based on this testimony and additional evidence presented at the hearing, the trial court made the following finding:

> The Court, having heard the evidence and argument of counsel, and having taken judicial notice of the Court's file, finds that R.E.D. is guilty of contempt for willfully, intentionally and contemptuously disobeying and violating this Court's Agreed Mutual Temporary Injunctions issued on July 31, 2006, by selling, transferring or otherwise alienating stocks held in the parties' Ameritrade account for the approximate sum of $367,573 in December of 2007 and/or January of 2008, while the Agreed Mutual Temporary Injunctions were in full force and effect.

In his briefing to this Court, relator does not dispute his testimony at the hearing on January 16, 2008, in which he admitted that he sold the stock. Relator repeated his testimony at the enforcement hearing on July 15, 2008. S.C.D.'s allegation merely recalled relator's admission of this fact. Such an allegation in the motion to enforce is sufficient to give relator notice of a fact to which relator admitted twice under oath. *See Ex parte Smith*, 467 S.W.2d 411 (Tex.Crim.App.1971). Because he twice testified that he sold stock in the parties' Ameritrade account during the period between December 2007 and January 2008, relator had sufficient information in the motion to identify the stock transactions in question.

Relator relies on *Ex parte Carney* to argue that S.C.D.'s motion to enforce is so lacking in specificity as to deny relator fair notice. *See* 903 S.W.2d 345, 346–47 (Tex. 1995). *Carney* is inapplicable to this case. In *Carney*, the relator was granted relief after a judgment creditor's motion for contempt based on the trial court's turnover order was found lacking "the requisite specificity" sufficient for fair notice. *Id.* at 346. In that case, the motion for contempt that charged relator with guilt did not give relator notice of the subject matter of the motion for contempt because the turnover order the relator was held in contempt for violating ordered the turnover of broad categories of assets and documents without identifying any specific documents or assets to be turned over. *Id.*[1] Nor was any other information provided to the relator at the show cause hearing. *Id.* Real party in interest in this case is not a

---

1. The turnover order directed the relator to turn over to the judgment creditor "his share of stock or beneficial interests 'together with all documents or records related to same,' in seven corporations owned or controlled by [the realtor], including [his] law practice; any non-exempt partnership distributions; all non-exempt funds in every account or certificate of deposit in which [he] has an interest; all non-exempt income distributions due to [him] from all businesses [he] operates or in which he has any involvement; and all cash on hand." *Ex parte Carney*, 903 S.W.2d 345, 346 (Tex.1995).

judgment creditor; relator is not a judgment debtor; the order violated was not a turnover order; and the amount of money derived from the stock sale and ordered to be placed in the registry of the court was specifically identified and traced to relator's improper sale of stock both in the motion to enforce and in the hearing.

In addition to case law, relator relies on subsection 157.002(b)(2) the Texas Family Code to argue that S.C.D. failed to meet the statutory fair notice requirements found in the Code. Relator cites to a section of the Texas Family Code applicable to motions for enforcement used in suits affecting the parent-child relationship. *See* TEX. FAM.CODE ANN. § 157.002(b)(2) (Vernon 2002). Relator's reliance on subsection 157.002(b)(2) is misplaced because this subsection governs only motion for enforcement of child support orders. *See id.; see also id.* at § 157.001 ("A motion for enforcement as provided in this chapter may be filed to enforce a final order for conservatorship, child support, possession of or access to a child, or other provisions of a final order.").

We hold that relator had fair notice of the subject matter of the contempt motion.

We overrule relator's second issue.

### Clear and Unambiguous Order

■ In his third issue, relator argues that the trial court's commitment order is void because the underlying agreed order is unclear, general, ambiguous and subject to more than one interpretation.

■ In order to support a judgment of contempt, the underlying decree must set forth the terms of compliance in clear, specific and unambiguous terms so that the person charged with obeying it will readily know exactly what duties and obligations are imposed on him. *Chambers*, 898 S.W.2d 257, 261. Generally, a court order is insufficient to support a contempt conviction only when its interpretation "requires inferences or conclusions about which reasonable persons might differ." *Chambers*, 898 S.W.2d at 260 (citing *Ex parte MacCallum*, 807 S.W.2d 729, 730 (Tex.1991)). To prevent the enforcement of a court order, the resisting party must show that the order has a reasonable alternative construction. *Id.* The order does not have to use language so specific as to counter every alternative interpretation. *Id.*

Relator argues that the following two portions of the agreed order, when read together, create such ambiguity that the trial court's commitment order is void:

4.3 It is ordered that Petitioner, R.E.D. and Respondent, S.C.D. are enjoined from:

. . . .

k. Selling, transferring, assigning, mortgaging, or in any other manner alienating any of the property of Petitioner or Respondent, whether personalty or realty, and whether separate or community, except as specifically authorized by order of this Court.

. . . .

4.4 It is further ordered that Petitioner, R.E.D. and Respondent, S.C.D. are authorized only as follows:

. . . .

d. To engage in acts reasonable and necessary to conduct Petitioner or Respondent's usual business and occupation.

. . . .

Relator agrees that the plain meaning of section 4.3(k) of the agreed order permits only the reasonable interpretation that relator was prohibited from selling the stock in the Ameritrade account. However, relator argues that when section 4.3(k) is

read together with section 4.4(d), the order becomes ambiguous because the trial court failed to define "usual business and occupation."

The purpose of section 4.4(d) is made clear when read in context. The following sections comprise the entirety of section 4.4 of the agreed order:

4.4 It is further ordered that Petitioner, R.E.D. and Respondent S.C.D. are authorized only as follows:

a. To make expenditures and incur indebtedness for reasonable and necessary living expenses for food, clothing, shelter, transportation and medical care;

b. To make expenditures and incur indebtedness for reasonable attorney's fees and expenses in connection with this suit;

c. To make withdrawals from accounts in financial institutions only for the purposes authorized by the Court's Order and

d. To engage in acts reasonable and necessary to conduct Petitioner or Respondent's usual business and occupation.

The purpose of section 4.4 is merely to create narrow exceptions to the prohibitions outlined in section 4.3 of the agreed order of mutual temporary injunctions. These exceptions allow the parties to use funds for basic living expenditures, business expenses, and legal help. The exception in section 4.4(d) does not modify the language in section 4.3. S.C.D. correctly, states that the plain meaning of section 4.3(k) could be interpreted only as a clear prohibition against selling personal community property, including stock in the Ameritrade account.

Relator's own testimony established that he did not seek authorization from the trial court to sell the stock and, in so doing, violated the court order. He failed to make any showing that the stock was sold in the "reasonable and necessary" conduct of his "usual business and occupation" or to pay necessary expenses. Rather, relator chose to pay taxes and to make a deposit in a trust fund account that was due 12 months after relator made the deposit. Relator testified that he sold the stock because "he wanted to" do so, and, in so doing, he chose to liquidate an account whose characterization as community property was disputed rather than to sell stock stipulated to be his separate property.

We conclude that the trial court's commitment order is valid because the agreed order was sufficiently unambiguous to give relator fair notice of the prohibitions and, therefore, the trial court's commitment order is valid.

We overrule relator's third issue.

### Intentional and Willful Violation of Trial Court Order

In his first issue, relator argues that there is no proof beyond a reasonable doubt that he intentionally and willfully violated the agreed order and, therefore, the commitment order is void.

To raise an inference that a contemnor intentionally and willfully violated a court order, the contemnor must have notice of an unambiguous court order. *Ex parte Chambers*, 898 S.W.2d at 261. Here, relator had notice of the "Agreed Mutual Temporary Injunction" because relator participated in the formation of the agreed order. Paragraph 4.3 of the agreed order unambiguously prohibited relator from selling or transferring any property, whether personalty or realty, separate or community, "except as specifically authorized by order of this Court." Relator's attorney signed the agreed order, approving it on relator's behalf as to form and substance. Relator

testified he "knew all about" the language and rights set forth in the agreed order and that he knew an injunction against his actions was in place when he sold the stock. The trial court could have found beyond a reasonable doubt that relator intentionally and willfully violated the trial court's order.

We overrule relator's first issue.

### Incarceration for a Debt

█ In his fourth issue, relator argues that the trial court's commitment order is void because the trial court lacked jurisdiction to impose incarceration for a debt obligation. Relator argues that the trial court's order that he pay $367,000 into the court registry is unconstitutional because the order creates a debt and also directs respondent to confined relator for failure to comply with the trial court's order. *See* TEX. CONST. art. I, § 18 (providing, "[N]o person shall ever be imprisoned for debt").

█ A district court possesses broad powers under the Family Code to "order a division of the estate of the parties in a manner that the court deems just and right." *See Ex parte Preston*, 162 Tex. 379, 382–83, 347 S.W.2d 938, 940 (1961); *see also* TEX. FAM.CODE ANN. §§ 7.001, 7.002 (Vernon 2008). The district court cannot order and bring about a division of the community estate unless the estate is first subjected to the court's control. *Preston*, 347 S.W.2d at 940. A party who has the right of control and disposition of the community estate and who reduces a part of that estate to cash is not a debtor of the other party, but rather he is constructively a trustee in holding the community assets and may be compelled to account for the disposition of those assets

by the court. *See id.* There is no question about the right of the trial court to hold a trustee in contempt of court for willfully refusing to obey an order to pay over funds held in his hands into the registry of the court in such a case. *See id.* at 940–41.

Relator relies on *In re Nunu* to support his argument that a trial court cannot incarcerate a contemnor for a debt, even if the debt arises from the trial court's contempt judgment. *See* 960 S.W.2d 649 (Tex.1997). *Nunu* is distinguishable from this case. In *Nunu*, the trial court's commitment order ordered the relator imprisoned until he paid an adjudicated debt for damages reimbursing a homeowner's association for expenses incurred because of the relator's conduct. *Id.* at 649–50.

█ Here, the trial court's commitment order does not punish relator for failure to pay a damages award but for violation of an injunction in the agreed order, issued pursuant to section 6.502(a)(7) of the Texas Family Code for "the preservation of the property and protection of the parties." *See* TEX. FAM.CODE ANN. § 6.502(a)(7) (Vernon 2006). A trial court in a divorce proceeding may exercise both criminal and civil contempt powers to enforce its orders when a contempt proceeding is instituted after its jurisdiction has attached. *See Werblud*, 536 S.W.2d at 546–47.[2] The trial court's civil commitment order orders relator to place the $367,000 from the stock sale into the court's registry, and it orders him to be confined in the Harris County Jail for 10 days as punishment for his violation of the order and to be further confined until he has placed the money into the registry of

---

2. "Cases of criminal contempt, where the sentence actually imposed does not exceed months imprisonment are exempted from the requirements of a jury trial." *Ex parte Wer-*

*blud*, 536 S.W.2d 542, 547 (Tex.1976). Relator's 10–day criminal punishment for contempt does not invoke the constitutional right to a jury.

the court to coerce his compliance with the order. The trial court had the power too punish the violation of the agreed order, and it had the power to coerce relator's compliance with its order to place the $367,000 realized from the improper stock sale into the registry of the court. Relator "carries the keys of (the) prison in (his) own pocket." *Werblud,* 536 S.W.2d at 545. The trial court had jurisdiction to issue the commitment order.

We overrule appellant's fourth issue.

### Conclusion

We decline to issue a writ of habeas corpus and withdraw our August 28, 2008 temporary stay of the trial court's order of commitment.