**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00174-CV**
_____

**IN RE W.B.B.**

**Original Proceeding**
**County Court at Law No. 2 of Orange County, Texas**
**Trial Cause No. E230008-D**

**MEMORANDUM OPINION**

In a combined petition for a writ of habeas corpus and a writ of mandamus, Relator W.B.B. ("Father"), asks this Court to order his discharge from confinement by the Sheriff of Orange County, Texas, for relief from an additional post-discharge restraint on his liberty, and for an order compelling the Honorable Troy Johnson, Judge of the County Court at Law No. 2 of Orange County, Texas, to vacate a Corrected Domestic Contempt Order signed on May 3, 2024 ("Contempt Order"), and an Amended Addendum to Final Decree of Divorce ("Addendum") signed on

1

May 3, 2024. *See* Tex. Gov't Code Ann. § 22.221; *see also* Tex. R. App. P. 52.[1] The Real Party in Interest, J.R.B. ("Mother"), asks this Court to deny the petition for a writ of habeas corpus and deny mandamus relief. As temporary relief, we stayed the trial court's orders and ordered Father's release on bond pending the resolution of this original proceeding. *See* Tex. R. App. P. 52.8(b)(3), 52.10(b).

Father is the Respondent in Trial Cause Number E230008-D, In the Matter of the Marriage of J.R.B. and W.B.B. and in the Interest of K.B., a Child. On May 3, 2024, the trial court signed a judgment of criminal contempt that sentenced Father to thirty days of confinement in the Orange County Jail for failing to comply with the trial court's oral order of May 2, 2024 at 2:30 p.m. that ordered the exchange of the child from Father to Mother for May 2, 2024 at 3:30 p.m. In a separate order titled Amended Addendum to Final Decree of Divorce, the trial court ordered Father to have an electronic monitor installed on his ankle.[2] In his petition to the appellate court, Father argues: (1) his continued detention is illegal because the terms of the trial court's oral order lacked reasonable specificity; (2) the contempt order is void because it fails to meet the statutory requirements of section 157.166 of the Family Code; (3) Father lacked willful intent to violate the trial court's oral order that "she

---

[1] We use initials and refer to the parties by their relationship to the child to protect the minor's privacy. *See* Tex. Fam. Code Ann. § 109.002(d).

[2] The Addendum contained additional provisions, but the installation of an electronic monitor on Father is the only provision of that order that has been challenged in this original proceeding.

gets the child today before 3:30"; (4) the order imposing an ankle monitor is an impermissible restraint on his liberty for which Father was not provided due process; and (5) the order requiring Father to wear an ankle monitor is void because it fails to meet the statutory requirements of section 157.166 of the Family Code. As explained below, we hold the Contempt Order and the Addendum requiring Father to submit to electronic monitoring are void, we grant the petition for a writ of habeas corpus, and we order that W.B.B. be discharged from custody and released from the trial court's order for electronic monitoring and from the bond set by this Court.

Background

The record contains a reporter's record of a May 2, 2024, hearing titled "Contempt Hearing[.]" The trial court began the hearing with a statement, "I got a visit with officers from the Orange Police Department yesterday morning." There was, however, no motion for enforcement or for contempt pending on that date, and the notice of April 30, 2024, noticing the hearing on May 2, 2024 at 2:00 p.m., gave notice that it was to be a status hearing. The court complained that the parties had reached a mediated settlement agreement (MSA) in December but had not produced a proposed decree. The trial court noted it was aware a debt issue remained unresolved but insisted that the parties present a decree by the end of the day. The trial court stated it had already drafted an addendum to the not-yet rendered decree of divorce. The trial court stated that he was going to order Mother and Father to

3

wear electronic ankle monitors. The trial court explained the ankle monitor would provide a little evidence if one of the parties were to violate the decree, but it identified no other purpose for Mother and Father to wear ankle monitors. The trial court added, "The fact that they wanted it off so badly that they reached the agreement tells me they don't like having the monitor on; and if they don't like it, then I do like it."

Mother's lawyer told the trial court that it was Mother's week for possession under the MSA and the temporary orders, but she had not had the child since the previous Friday and the child had not been in school that week. The trial court stated, "All right. Well, then she gets the child today before 3:30; and if not, somebody will go to jail."

The hearing reconvened less than three hours later. The trial court began the hearing by saying, "It came to my attention that the exchange of the child and transfer of the child to [Mother] did not happen before 3:30 p.m. today. So, I want to hear evidence so I can decide whether or not it happened []before 3:30 p.m. I don't know if you'd call this an enforcement hearing or a contempt hearing." Father's attorney objected to proceeding with an enforcement hearing without ten days' notice and personal service. The trial court replied that Father was not accused of failing to give the child to Mother during her period of possession, but he was before the court for failing to comply with the oral order made by the trial court at 2:30 p.m.

4

that Father "surrender" the child to Mother by 3:30 p.m. Father's attorney again objected to lack of notice, to which the trial court replied, "This is not direct contempt in a [manner] of speaking because I need to hear from witnesses to determine whether or not contempt did or did not occur--whether or not the order--oral order that I issued was followed or not followed." The trial court overruled Father's objections.

Mother testified that Father initially instructed her to go to her sister's house for the transfer, but Mother asked Father to swap the child at the police station in Orange instead. Mother described a series of text messages that Father sent to Mother that afternoon. At 3:11 p.m. she received a text message that they were at the Orange Police Department. Mother arrived there at 3:30 p.m. or shortly thereafter. She remained in her vehicle. At 3:38 p.m. Father texted Mother that the child would not go, that the child was having a breakdown, and an officer was en route. At 3:48 p.m., Father texted Mother and suggested that she could come get the child and Father would walk across the street so as not to interfere. Three officers approached the truck. The child rolled down the window then exited the vehicle. Father walked up to them. The officers instructed Father to leave, which he did. Father returned to give the child his cell phone, then left again. The child continued to speak with the officers. Mother estimated that the child exited the truck at about 3:59 p.m. They left the parking lot at 4:15 p.m. The child went with her because the

officer explained that Mother had to be in court, and she would leave the child with their pastor. On cross-examination, Mother admitted all it took to get the child out of the vehicle was to walk over and ask him to get out, but by then it was 4:00. Mother also admitted that Father was inside the building at that time.

Officer Garrold Keaton testified that at 3:32 p.m. dispatch directed him to join detectives at the police department. He went to the parking lot, told the child to get out of the vehicle, the child complied, and Father left. The child spoke with Officer Keaton privately for "a considerable amount of time because [the child] was an emotional wreck." Officer Keaton described Father as cooperative and peaceful and according to the officer Father did nothing to impede the exchange.

Sergeant Logan Holland testified that the officers walked out to the parking lot together. Mother was inside her vehicle. Father left his vehicle before the officer spoke with the child. According to Sergeant Holland, the only person causing a delay was the child.

Sergeant Nicholas Medina testified that when he arrived at the station, Father exited his truck, approached Sergeant Medina, and stated something like, "I'm not going to jail. You get him out[.]" Sergeant Medina told Father to handle his business. According to Sergeant Medina, this exchange occurred before 3:30 p.m.

Father testified that he arrived 25 minutes early and asked officers to assist him before Mother arrived. He called the child's counselor and asked her to

6

encourage the child to go with Mother. According to Father, he did everything in his power that he could except to use physical violence to get his 6-foot-one-inch, 205-pound child out of the truck.

Contempt

"A writ of habeas corpus will issue if the commitment order is void because it deprives the relator of liberty without due process of law." *Ex parte Swate*, 922 S.W.2d 122, 124 (Tex. 1996) (orig. proceeding). "In a habeas corpus action challenging confinement for contempt, the relator bears the burden of showing that the contempt order is void." *In re Coppock*, 277 S.W.3d 417, 418 (Tex. 2009) (orig. proceeding).

Father argues the trial court's sua sponte oral order that "she gets the child today before 3:30; and if not, somebody will go to jail[]" failed to clearly inform Father how, when or where he was to surrender the child and further failed to specify the provision in the underlying order on which the Court relied. Father additionally argues the judgment of contempt is void because it fails to accurately reflect the actual order Father was found to have violated.

Mother argues the language the trial court used in the status hearing made it readily understandable that Father was going to jail unless he got the child into the possession of the mother by 3:30 p.m. that day. Mother additionally argues that the Contempt Order clearly states the provisions of the order that Father violated by

7

stating that Mother did not receive possession of the child as the trial court had ordered.

The trial court's Contempt Order states:

> On this the 2nd day of May, 2024, Respondent, [Father], appeared in the courtroom in the original hearing with his attorney, Tonya Toups. The Petitioner, [Mother], also appeared with her attorney, Jolei Shipley.
>
> Attorney Shipley pointed out that [Father] was in possession of their child even though it was not his week of possession in violation of the Modified Temporary Orders signed by the Court on December 5, 2023 and Mediated Settlement Agreement signed by all parties on December 19, 2023. This afternoon the Court ordered that the child shall be returned to [Mother] by 3:30 p.m.—giving the Respondent just over an hour to comply with the Court's Order (see attached transcript).
>
> At 3:30 p.m. and after the Court was advised that [Mother] did not receive possession of their child, the Court ordered that a Contempt Hearing be conducted regarding the matter.
>
> Attorney Jolei Shipley appeared at the Contempt Hearing with [Mother]. Attorney Tonya Toups also appeared. [Father] appeared at the hearing.
>
> After hearing testimony from witnesses on the issue of whether the child was returned to [Mother] before 3:30 p.m. on May 2, 2024:
>
> The Court held [Father] in contempt of court for his failure to comply with the Court's oral Order.
>
> The Court makes the following ruling:
>
> Respondent, [Father], is found IN CONTEMPT and sentenced to 30 days in the Orange County Jail.

ORDERED this the 3[rd] day of May, 2024.

"A criminal contempt conviction for disobedience to a court order requires proof beyond a reasonable doubt of: (1) a reasonably specific order; (2) a violation of the order; and (3) the willful intent to violate the order." *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995) (orig. proceeding). "To be enforceable by contempt, a

judgment must clearly order or command a party to perform the obligations imposed and the terms for compliance must be clear and unequivocal." *Coppock*, 277 S.W.3d at 418. "If the underlying order is susceptible to more than one interpretation, the ensuing contempt judgment will be void." *In re Estrello*, 130 S.W.3d 391, 396 (Tex. App.—Beaumont 2004, orig. proceeding).

The trial court's oral order that "she gets the child today before 3:30" implies that Father must surrender possession of the child to Mother by 3:30 p.m. that day, but it completely fails to tell Father where or how "she gets the child" so that Father would understand that he could not satisfy the order by driving to the Orange Police Department, which was a location selected by Mother, parking his vehicle before 3:30 p.m., asking the child's counselor and the police for assistance in persuading the child to voluntarily exit the vehicle, and walking away so the police could speak with the child to get him out of Father's car, while Mother remained in her vehicle. The temporary orders and the MSA are not in the record, and while it is possible they may have provided more information regarding the acts required for Mother to "get[] the child[,]" neither the oral order nor the Contempt Order specifies the language contained in the temporary orders and the MSA. Additionally, the Contempt Order states, "After hearing testimony from witnesses on the issue of whether the child was returned to [Mother] before 3:30 p.m. on May 2, 2024: The Court held [Father] in contempt of court for his failure to comply with the Court's

oral Order." The Contempt Order fails to find or state that Father willfully failed to "get" the child to Mother before 3:30 p.m. on May 2, 2024. We conclude that the Contempt Order is void.

Father argues the Addendum is also void because it issued without due process. He complains that he received at most two days' notice of a status hearing, he was not informed of the provisions of an order that he had allegedly violated, and he was not given an opportunity to present evidence.

Mother argues Father waived his complaints about the Addendum because he failed to present his arguments to the trial court. However, the record of the contempt hearing shows that Father made an objection to proceeding with the hearing without ten days' notice and he argued he had never been personally served with a motion for enforcement and he was entitled to an opportunity to present evidence. Mother suggests that the ankle monitor order was a matter separate from the contempt, but rendition of the divorce decree was not before the trial court at that moment, and the contempt matter was before the trial court. The trial court's statement that it liked ankle monitors because the parents disliked them so much that they reached a divorce settlement indicates the trial court did not base the Addendum on any specific behavior and neither party sought further imposition of an ankle monitor.

Mother argues Father's complaint that the trial court entered an enforcement order without due process does not apply to the Addendum because "no motion for

10

Enforcement relating to this issue was ever filed and/or presented in the Trial Court below by either party or the Trial Court itself." Mother additionally argues that the trial court's sua sponte decision to impose electronic monitoring upon Father was a valid exercise of the trial court's inherent power to punish a party who fails or refuses to obey a prior order or decree. Assuming without deciding that the trial court could order Father to submit to electronic monitoring as an exercise of the trial court's inherent power to punish Father for violating the trial court's oral order, the trial court still could not exercise that power without affording Father due process.

"[C]onstitutional due process of law requires that notice of the accusation, an opportunity to prepare a defense, and an opportunity to be heard be afforded to the alleged constructive contemnor." *Ex parte Gordon*, 584 S.W.2d 686, 689-90 (Tex. 1979) (orig. proceeding). "[I]n situations of contempt committed outside the presence of the court, the contempt judgment must be based on a valid show cause order or equivalent legal process that contains full and unambiguous notification of the accusation of contempt." *Id*. at 690. "A contempt judgment rendered without such notification is a nullity." *Id*. at 688. The trial court recognized that it was determining an issue of constructive contempt but pressed on with a hearing notwithstanding Father's objections.

We hold the Contempt Order and that part of the Addendum that requires Father to submit to electronic monitoring are void. We grant the petition for a writ

of habeas corpus and set aside the trial court's Contempt Order and that part of the Addendum that requires Father to submit to electronic monitoring. We order that Father be discharged from custody, released from the trial court's order for electronic monitoring, and released from the bond set by this Court. Having granted relief through habeas corpus, we lift our order staying the orders and we do not reach Father's request for mandamus relief.

PETITION GRANTED.

PER CURIAM

Submitted on May 29, 2024
Opinion Delivered August 1, 2024

Before Golemon, C.J., Johnson and Chambers, JJ.

12