# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO.  03-25-00163-CV

---

**In re Kailyn Andrews**

---

### FROM THE 169TH DISTRICT COURT OF BELL COUNTY
### NO. 22DFAM335858,
### THE HONORABLE CARI L. STARRITT-BURNETT, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

In this original proceeding, relator Kailyn Andrews seeks habeas relief from the trial court's order revoking suspension of commitment and ordering her committed to the custody of the Sheriff of Bell County to be confined for a period of six months in the Bell County Jail.  We ordered Andrews released from custody pending our disposition of this original proceeding and requested a response from real party in interest Nicholas Denbrock, who filed a response opposing the requested relief.

For the following reasons and based on our review of the petition, response, and record, we conclude that Andrews is entitled to the relief requested and grant her petition for writ of habeas corpus.

## BACKGROUND

Andrews shares custody of her child (Child) with Denbrock, who is Child's father.  In August 2024, the trial court signed an order in suit to modify the parent-child

relationship (Modification Order) and an order of enforcement by contempt and suspension of commitment against Andrews (Contempt Order). In the Modification Order, the court ordered that Andrews's periods of possession were limited to supervised visits and enjoined her from going within 1,000 feet of Denbrock or Child except for scheduled supervised visit periods.[1]

In the Contempt Order, the trial court found that on multiple occasions, Andrews had violated an August 2022 Nevada order that addressed the custody of Child and had been registered for enforcement in Bell County; found Andrews in contempt for each separate violation of the Nevada order; assessed her punishment for each violation as confinement in the Bell County Jail for a period of six months to run concurrently; suspended the imposition of her commitment; and placed her on community supervision for a period of ten years. The terms and conditions of her community supervision included the requirements that she comply with all orders of the court and any injunctive relief imposed against her and that she pay $4,200 in attorney's fees to Denbrock's counsel by October 1, 2024. The trial court also ordered the award of a judgment against Andrews for the $4,200 in attorney's fees.[2]

On February 20, 2025, the trial court held a combined hearing in different cause numbers between the parties on multiple pending motions including Denbrock's motion to revoke suspended commitment and motion to declare Andrews a vexatious litigant. Andrews was not represented by counsel during the hearing.

---

[1] In November 2024, the trial court signed a reformed order in suit to modify the parent-child relationship. The reformed order also ordered that Andrews's visits with Child were supervised and enjoined her from coming within 1,000 feet of Denbrock or Child except for scheduled supervised visit periods.

[2] As to the judgment awarding attorney's fees, the trial court found that enforcement of this order was necessary to ensure Child's physical or emotional health or welfare and that it "may be enforced by any means available for the enforcement of child support, including contempt."

Shortly after commencing the hearing, the trial court stated that the hearing in the "Denbrock case" was "part two of the hearing regarding the enforcement, temporary hearing, inability to pay court costs and the amended enforcement set for today, which includes a Motion to Revoke Suspended Commitment and Declaring Vexatious Litigant." When asked if she was ready to proceed, Andrews responded that she had filed a motion for special appearance, as well as a motion to vacate orders for constitutional violations, and asked the trial court to address those matters before any other matters. The trial court denied her special appearance. Andrews continued to object to "moving forward on any of the other proceedings" because of violations of her constitutional rights, including due process, and the Texas Family Code. She argued that the trial court did not have jurisdiction to enter the orders and that the orders were void.

After Denbrock made arguments in support of his motion to declare Andrews a vexatious litigant, she continued to object to proceeding. At that point, the trial court asked her if she had any court ruling that held that her constitutional rights had been violated, and she responded "that it doesn't take somebody else to see that [her] constitutional rights and [her] due process . . . have been violated," specifically referring to previous orders, including the Contempt Order, and her "right to an attorney," "the right to be heard," the "right to have a jury," and "the right to clear and convincing evidence, which there was none."

After further exchanges between the trial court and Andrews, the trial court asked Andrews if she had brought documents with regards to her income, and she responded that she showed her income on her statement of inability to pay. The trial court then asked if she had brought "documentation of proof of benefits, income, or expenses," and Andrews responded that she did not receive any benefits. At that point, the trial court denied her statement of inability to pay court costs. The trial court then proceeded to consider Denbrock's motion to declare her a

3

vexatious litigant.  As to that motion, Andrews stated that she could not afford an attorney.  The trial court granted that motion and then turned to Denbrock's motion for revocation of the suspended commitment, advising the parties that it was treating it "like day two on that issue." Andrews again objected to proceeding, but the hearing continued.

During that portion of the hearing, Denbrock testified that in violation of the court's orders, Andrews came within 1,000 feet of Denbrock and Child and that she had not paid the attorney's fees of $4,200.  Andrews testified that the Contempt Order was subject to legal challenge because of "failure to comply with legal requirements, due process of law, violations" and that it "was illegal and unlawful," but the trial court sustained Denbrock's relevancy objection to this testimony, explaining to Andrews that the "issues for today [were] with regards to the fees and [her] violating the orders."  The trial court then admonished Andrews about her right not to incriminate herself and asked her if she was still choosing to testify:

> And you do have a right—I know I reminded you of this last time, but you do have a right to not incriminate yourself.  So you could have [Denbrock's counsel] and his client do this on their own without you saying anything.  Are you still choosing to testify despite your Fifth Amendment rights to not incriminate yourself?

Andrews answered that that she would like "to just state that the contempt orders are unenforceable and unlawful," but the trial court again sustained Denbrock's relevancy objection to this testimony and then asked Andrews if she was choosing to invoke her Fifth Amendment rights.  She answered, "I will," and did not testify further.

The trial court then asked for argument on the motion.  Prior to Andrews's turn to argue, the trial court advised her again that she "[did] not have to incriminate [herself] by making any argument" and explained to her that the court was "advising [her] of that" because she was

4

"representing herself." Andrews responded that she did not want to make an argument but to assert that the orders were unconstitutional, void, and violated her due process rights and that enforcement of the orders would be a violation of due process "in and of itself."

Following the parties' arguments, the trial court ruled that it was revoking the suspension of commitment. When asked by the trial court if there was anything else before she was taken into custody, Andrews answered that she "would like to motion for an immediate Writ of Habeas Corpus," that she had "not had due process," and that "putting [her] into custody today [was] unlawful and a violation of [her] due process." The trial court ordered Andrews into custody and adjourned the hearing.

The trial court's order revoking suspension of commitment recites that Andrews "appeared physically in the courtroom, and having waived the right to counsel, announced ready"; found that Andrews had violated the terms and conditions of her community supervision by coming within 1,000 feet of Denbrock and Child on two occasions and failing to pay the attorney's fees of $4,200; revoked the suspended commitment; and ordered Andrews committed to the custody of the Sheriff of Bell County to be confined in the Bell County Jail for six months. Approximately three weeks later and represented by counsel, Andrews filed this original proceeding.

**ANALYSIS**

Andrews seeks habeas relief from the trial court's order revoking suspension of commitment. "A commitment order may be collaterally attacked in an original habeas corpus proceeding." *In re Hilburn*, No. 05-20-01068-CV, 2022 Tex. App. LEXIS 1836, at *14 (Tex. App.—Dallas Mar. 21, 2022, orig. proceeding) (citing *In re Henry*, 154 S.W.3d 594, 596 (Tex.

5

2005) (orig. proceeding)). "The purpose of a writ of habeas corpus is not to determine the guilt of the contemnor, but only to determine whether the contemnor has been unlawfully confined." *Id.* at \*14–15 (citing *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979) (orig. proceeding)). "When a relator, after being sentenced to jail, is 'released on bond pending review by habeas corpus, there is sufficient restraint of liberty to justify issuance of [a] writ of habeas corpus.'" *Id.* at \*15 (quoting *In re Vaughn*, No. 12-09-00143-CV, 2009 Tex. App. LEXIS 7979, at \*2 (Tex. App.—Tyler Oct. 14, 2009, orig. proceeding) (mem. op.)).

A court may issue a writ of habeas corpus when a commitment order is void. *Ex parte Swate*, 922 S.W.2d 122, 124 (Tex. 1996) (orig. proceeding); *see In re Luther*, 620 S.W.3d 715, 721–22 (Tex. 2021) (orig. proceeding). Relevant here, a commitment order is void if it deprives the relator of liberty without due process of law. *Ex parte Barnett*, 600 S.W.2d 252, 254 (Tex. 1980) (orig. proceeding); *In re Stein*, 331 S.W.3d 538, 540 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding) (per curiam). "In a habeas corpus proceeding, the order or judgment challenged is presumed to be valid." *In re Lehr*, No. 04-05-00934-CV, 2006 Tex. App. LEXIS 809, at \*4 (Tex. App.—San Antonio Feb. 1, 2006, orig. proceeding) (mem. op.). A relator bears the burden of showing that the challenged order is void and "must conclusively establish his entitlement to a writ of habeas corpus." *Id.* (citing *In re Pruitt*, 6 S.W.3d 363, 364 (Tex. App.—Beaumont 1999, orig. proceeding)).

Among her asserted grounds for habeas relief, Andrews argues that the trial court failed to admonish her of her right to counsel at the February 2025 hearing.[3] Because a possible

---

[3] Andrews also seeks habeas relief from the portion of the order that revokes the suspension of her commitment based on her failure to pay attorney's fees. Because we conclude that she is entitled to habeas relief on the ground that the trial court failed to admonish her of her

6

outcome of the hearing, which included Denbrock's motion to revoke suspension of commitment, was Andrews's incarceration, she was entitled to be admonished of her right to counsel. *See* Tex. Fam. Code § 157.163(a)–(b) (requiring trial court to first determine if incarceration of respondent is possible result of proceedings, and if so, to inform respondent who is not represented by attorney of right to be represented by attorney); *In re Casey*, No. 01-08-00928-CV, 2009 Tex. App. LEXIS 2997, at *4 (Tex. App.—Houston [1st Dist.] Apr. 30, 2009, orig. proceeding) (mem. op.) (concluding that unrepresented relator was entitled to be admonished of right to counsel because relator's incarceration was possible outcome of hearing); *In re Ohiri*, 95 S.W.3d 413, 415 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding) (holding that compliance hearing, with possible outcome of relator's incarceration, triggered trial court's statutory duty under Section 157.163(b) of Texas Family Code to admonish unrepresented relator of right to counsel).

Denbrock does not dispute that Section 157.163(b) of the Texas Family Code requires a trial court to inform an unrepresented litigant of the right to counsel when incarceration is a possible outcome of a hearing but argues that "[s]ubstantial compliance" with this requirement in the Texas Family Code can be found "when the record, viewed as a whole, demonstrates the respondent's awareness of their rights" and that, in this case, the transcript from the February 2025 hearing, "[w]hen viewed in its entirety," "clearly shows that the court provided adequate admonishment and Andrews consciously elected to proceed by representing herself." Denbrock argues that Andrews was aware of her right to counsel because she "chose to represent herself in prior proceedings in which contempt or jail time was at stake," she appeared

_____

right to counsel, we do not address her arguments concerning attorney's fees. *See* Tex. R. App. P. 47.1.

7

at a hearing in January 2025 on the issuance of a protective order, and during the February 2025 hearing, she referred to her right to an attorney. Denbrock also relies on the trial court's specific acknowledgement during the hearing of her pro se status, its admonishment to her of her Fifth Amendment right against self-incrimination, and Andrews's invocation of that right.

But as to the trial court's acknowledgment that Andrews was representing herself and its statement to her that it was "advising [her] of that" because she was representing herself, the court's reference to "that" was to her Fifth Amendment right not to incriminate herself by making an argument. And as to Andrews's reference at the hearing that she had the right to an attorney, that reference was in response to the trial court's question of whether Andrews had any court ruling that held that her constitutional rights had been violated. Andrews responded that her due process rights had been violated by prior orders such as the Contempt Order, which recites that Andrews "appeared and announced not ready for trial." Andrews argued to the trial court that it did not have jurisdiction to enter the orders that it did such as the Contempt Order because of her "right to an attorney," "the right to be heard," the "right to have a jury," and "the right to clear and convincing evidence, which there was none." Andrews also objected throughout the hearing to proceeding because her constitutional rights had been violated. In this context, Andrews's reference during the hearing to her right to an attorney, among other rights that did not apply, does not support relieving the trial court of its duty to admonish her of her right to have counsel to represent her at that hearing, where a possible outcome included Andrews's incarceration.

Denbrock also relies on the docket entry from the February 2025 hearing that reflects the notation that "admonishments included" and the recitation in the order revoking suspension of commitment that Andrews waived her right to counsel. The docket entry,

8

however, does not state that the admonishments that the trial court gave to Andrews included the right to counsel, and the record does not support the recitation in the order that she waived her right to counsel and, thus, is not controlling. *See In re Lehr*, 2006 Tex. App. LEXIS 809, at *7–8 (explaining that when evaluating due process issues in contempt proceeding, "recitations in a judgment that are unsupported by the record are not controlling" and concluding that order holding relator in contempt was void because nothing in record supported that relator was informed of right to be represented by counsel and nothing in record supported recitation in judgment that relator "knowingly and intelligently waived his right to counsel" (citing *Ex parte Caldwell*, 416 S.W.2d 382, 384 (Tex. 1967) (orig. proceeding))); *see also Ex parte Keene*, 909 S.W.2d 507, 508 (Tex. 1995) (orig. proceeding) ("In the absence of a knowing and intelligent waiver by Keene of his right to counsel, made on the record, the trial court had no authority to hold him in contempt."); *Hutchins v. State*, No. 12-09-00258-CV, 2010 Tex. App. LEXIS 6649, at *7 (Tex. App.—Tyler Aug. 18, 2010, no pet.) (mem. op.) (explaining that appellate court reviews totality of circumstances to assess whether waiver of right to attorney is effective). Rather, the record from the February 2025 hearing reflects that the trial court admonished Andrews of her right not to incriminate herself when she was testifying and before it was her turn to make arguments but not of her right to counsel. *See In re Lehr*, 2006 Tex. App. LEXIS 809, at *7–8; *see also In re Pass*, No. 02-05-00457-CV, 2006 Tex. App. LEXIS 2097, at *7–10 (Tex. App.—Fort Worth Mar. 16, 2006, orig. proceeding) (mem. op.) (observing that although contempt order stated that petitioner waived right to counsel, nothing in record supported recitation; granting habeas relief; and collecting cases in which habeas relief was granted because trial court failed to admonish relator of right to counsel).

Based on our review of the record, we conclude that the trial court failed to admonish Andrews of her right to have an attorney represent her during the hearing and, thus, that she is entitled to unconditional release from the restraint ordered by the trial court in its order revoking suspension of commitment.[4]  *See Ex parte Acker*, 949 S.W.2d 314, 316 (Tex. 1997) (orig. proceeding) (concluding that commitment arising from contempt order was void because trial court failed to admonish relator of right to counsel); *In re Ohiri*, 95 S.W.3d at 415 (concluding that relator was entitled to "unconditional release" from restraint ordered by trial court in commitment order because relator's "statutory due process right to be advised of his right to counsel was violated").

---

[4]  To the extent that Denbrock relies on this Court's supplemental opinion on rehearing in *Caldwell v. Garfutt*, No. 03-12-00696-CV, 2014 Tex. App. LEXIS 4253 (Tex. App.—Austin Apr. 17, 2014, no pet.) (mem. op.), that case is factually distinguishable.  In that case, we concluded that Caldwell had not demonstrated that the trial court clearly abused its discretion based on Section 157.163 of the Texas Family Code, but the parties in that case had agreed to the contempt order, which included the agreement to suspend Caldwell's commitment for contempt, and, thus, he was not confined as a result of that proceeding. *Id.* at *3–4.  Caldwell also testified under oath that he was representing himself and that he knew he had the right to hire an attorney but that he was agreeing to "make these agreements on [his] own" and that he was doing so "voluntarily." *Id.*  Further, prior to the hearing that resulted in the agreed contempt order, the trial court already had sustained a contest to Caldwell's affidavit of indigence. *Id.* at *4.  In contrast, here, the trial court did not deny Andrews's affidavit of indigence until the February 2025 hearing, which was the hearing that resulted in Andrews's confinement. *See In re Leon*, No. 01-04-00819-CV, 2004 Tex. App. LEXIS 9074, at *7–8 (Tex. App.—Houston [1st Dist.] Oct. 14, 2004, orig. proceeding) (mem. op.) (concluding that record did not support trial court's finding that relator had waived right to counsel and that after trial court found relator not to be indigent, trial court should have allowed relator reasonable time to obtain counsel).  And, more importantly, Andrews was not asked under oath or otherwise if she understood that she had the right to have an attorney represent her at the February 2025 hearing, and when she referred to her right to an attorney, it was in the context of listing rights, some of which were not applicable such as the right to a jury trial, and to prior orders, particularly the Contempt Order.

10

**CONCLUSION**

For these reasons, we grant the requested writ of habeas corpus and order Andrews released from the custody of the Sheriff of Bell County and any bond posted in connection with this proceeding to be discharged.

_____

Rosa Lopez Theofanis, Justice

Before Justices Triana, Theofanis, and Crump

Filed:   April 9, 2025

11